# EXHIBIT 1

Approved, SCAO

**BEST COPY AVAILABLE**

| Original - Court | 2nd copy - Plaintiff |
| 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>Sixth JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>12-128839-CH<br>JDG D. O'BRIEN |

11881240 NJ

**Court address** | **Court telephone no.**
1200 N. Telegraph, Pontiac, MI

**Plaintiff's name(s), address(es), and telephone no(s).**
SHARAI BALFORD

v

**Defendant's name(s), address(es), and telephone no(s).**
1. Bank of New York Mellon f/k/a Bank of New York As Trustee For The Certificate Holders of CWABS, Inc. Asset-Backed Certificates 2005-17
2. Bank of America
3. Specialized Loan Servicing, LLC
4. Mortgage Electronic Registration Systems, Inc.

**Plaintiff's attorney, bar no., address, and telephone no.**
Vanessa G. Fluker (P64870)
VANESSA G. FLUKER, ESQ., PLLC
2920 E. Jefferson, Suit 101
Detroit, MI 48207
(313) 393-6005

RECEIVED
NOV - 1 2012
MERS

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>AUG 20 2012 | This summons expires<br>NOV 19 2012 | Court clerk<br>Bill Bullard Jr. |

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Southfield, MI | Defendant(s) residence (include city, township, or village) |

| Place where action arose or business conducted<br>Oakland County, MI |

08/19/2012 | /s/Vanessa G. Fluker
Date | Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) **SUMMONS AND COMPLAINT** MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28


SCANNED

This case has been designated as an eFiling case. To review a copy of the
Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/efiling.

<div style="text-align:center">

**STATE OF MICHIGAN**
**IN THE SIXTH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

</div>

SHARAI BALFORD

      Plaintiff,

v

BANK OF NEW YORK MELLON F/K/A BANK OF NEW
YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF
CWABS, INC. ASSET-BACKED CERTIFICATES 2005-17;
BANK OF AMERICA; SPECIALIZED LOAN SERVICING, LLC;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
jointly and severally,

      Defendants.

Case No. 2012-128839-CH
Hon.  JDG D. O'BRIEN

---

Vanessa G. Fluker (P64870)
**VANESSA G. FLUKER, ESQ., PLLC**
Attorneys for Plaintiff
2920 E. Jefferson, Suit 101
Detroit, MI 48207
(313) 393-6005 (P)
(313) 393-6007 (F)
vgflawycr@sbcglobal.net

---

<div style="text-align:center">

**COMPLAINT AND JURY DEMAND**

</div>

A civil action between the parties arising out of the transaction or
occurrence alleged in the complaint has not been previously filed.

<div style="text-align:center">

/s/Vanessa G. Fluker
Vanessa G. Fluker

**PARTIES**

</div>

1.    Plaintiff Sharai Balford owns real property in the City of Southfield, County of

Oakland, State of Michigan.

2.    Defendant Bank of New York Mellon f/k/a Bank of New York is a national

banking association doing business in the County of Oakland, State of Michigan. Defendant

Bank of New York Mellon f/k/a Bank of New York's corporate offices are located at 1 Wall St.,

New York, New York 10286.

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

3. Defendant Certificateholders CWABS, Inc. Asset Backed Certificate Series 2005-17 is the issuing entity of trust certificates associated with this litigation matter and the foreclosing entity. Defendant Certificateholders CWABS, Inc. Asset Backed Certificate Series 2005-17, pursuant to Securities Exchange Commission documentation, is represented by its Trustee entity Bank of New York Mellon f/k/a Bank of New York with corporate offices located at 1 Wall St., New York, York 10286.

4. Defendant Bank of America, NA is a national banking association doing business in Oakland County, Michigan. Defendant Bank of America, NA has corporate offices located at 100 N. Tryon St., Charlotte, North Carolina 28255.

5. Defendant Specialized Loan Services, LLC (SLS) is a mortgage servicing company doing business in Oakland County, Michigan with its Resident agent Capital Corporate Services, Inc. located at 712 Abbott Rd., East Lansing. Michigan 48823.

6. Defendant Michigan Electronic Registration Systems, Inc. (MERS) is a recording and tracking entity with corporate offices located at 1818 Library Street, Suite 300, Reston, Virginia 20190.

### JURISDICTION AND VENUE

7. The amount in controversy is in excess of Twenty-five Thousand Dollars ($25,000.00) exclusive of costs and attorney fees and is otherwise within the jurisdiction of this Honorable Court pursuant to MCL 600.1605.

8. Venue is proper in this Honorable Court pursuant to MCL 600.1605.

### FACTUAL BACKGROUND

9. Plaintiff Sharai Balford, owns and resides at 21501 Buttercrest St., Southfield, Michigan 48075 with her husband and two children.

2

10. Plaintiff entered into a mortgage contract with Countrywide Home Loans on November 25, 2005. (**Exhibit 1**, Mortgage and Note) The mortgage loan was an adjustable rate mortgage (ARM) with a maximum interest of **16.00%**.

11. Plaintiff experienced a lay-off from her job and the family income decreased, yet the mortgage payments continued to increase. Plaintiff sought assistance from BAC Home Loan Servicing for loan modification assistance. In early April 2010, Plaintiff sent information to BAC regarding obtaining loan modification. In late April 2010, Plaintiff received letter requesting financial information, which was sent back to BAC.

12. In July 2010, Plaintiff received denial letter for loan modification. Yet, on July 29, 2010, BAC requested a hardship letter, and additional financial information for modification review.

13. Plaintiff prepared the hardship letter on July 29, 2010, and sent the information on August 3, 2010, via certified mail to BAC Home Loan Servicing CEO Brian Moynihan and President Obama's office. (**Exhibit 2**, Letter dated July 29, 2010, with US Postal Green Card Receipts) Plaintiff also requested details regarding calculation for loan modification and detail of why Plaintiff was allegedly denied in early July. Interestingly on August 2, 2010, Plaintiff received a letter regarding a short sale from Sandor Koross, which Plaintiff did not request. (**Exhibit 3**, Bank of America dated August 2, 2010)

14. On August 5, 2010, Plaintiff spoke with Kia who confirmed receipt of certified letter for BAC Home Loan Services. On August 6, 2010, Plaintiff spoke with Luther Thomas and confirmed receipt of a certified letter from BAC's CEO's office. On August 18, 2010, Plaintiff received confirmation of receipt of the certified letter from the Office of the White House. (*See* **Exhibit 2**)

3

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

15.     On August 31, 2010, Thomas Carter of Bank of America, sent a letter stating a hardship request was not received and requested financial information again. (**Exhibit 4**, Bank of America Letter dated August 31, 2010)   On September 9, 2010, Plaintiff resent hardship documents to Thomas Carter with updated financial information. (**Exhibit 5**, Letter dated September 9, 2010)

16.     On October 5, 2010, *Plaintiff received a letter from Thomas Carter stating financial information had not been received and they were not able to contact us.  On October 19, 2010, Plaintiff faxed a Hardship letter and financial information for the third time to Thomas Carter and requested detailed information regarding how the trial loan modification was determined*. (**Exhibit 6,** Letter dated October 18, 2010)

17.     On November 15, 2010, Plaintiff received a letter from Michelle Maxie stating that BAC was not able to contact her, which was untrue.  (**Exhibit 7**, Bank of America Letter dated November 15, 2010)   On November 24, 2010, Plaintiff called Michelle Maxie to discuss her loan modification and was told the financial information was being reviewed.  On December 9, 2010, Bank of America was still requesting information and referring Plaintiff again to its website for information. (**Exhibit 8,** Bank of America Letter dated December 9, 2010)

18.     On July 21, 2011, Plaintiff received a check from the Federal Trade Commission for a settlement regarding Countrywide engaging in unlawful practices in the origination and servicing of consumer home mortgage loans.  The settlement language provided no foreclosure could ensue until borrowers were properly reviewed for loss mitigation. (**Exhibit 9**, FTC Check and FTC Settlement Agreement)

19.     On or about September 20, 2011, Plaintiff received a letter from Trott & Trott, P.C. regarding the upcoming foreclosure, stating that Plaintiff could meet for mediation. Plaintiff responded and sent a letter to Trott & Trott requesting a mediation meeting.  Yet the

4

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

home was scheduled for Sheriff's Sale on October 12, 2011. (**Exhibit 10**, Notice of Foreclosure dated October 12, 2011)

20.     On November 21, 2011, Plaintiff requested to meet with BAC through an invitation to get a loan modification. On December 8, 2011, Plaintiff again sent documentation for a loan modification to BAC for an upcoming meeting scheduled for December 21, 2011. On December 15, 2011, Plaintiff called BAC and spoke with Grace at the Detroit office to confirm the loan modification meeting for December 21, 2011. Grace informed Plaintiff that Plaintiff's loan was transferred even though there was a loan modification meeting scheduled for December 21, 2011.

21.     On January 2, 2012, Plaintiff received a letter regarding the loan transfer from Specialized Loan Servicing (SLS). (**Exhibit 11**, SLS Welcome Letter and Letter of Transfer of Servicing) On January 3, 2012, Plaintiff called SLS regarding obtaining a loan modification. Plaintiff spoke with Julio (Operator ID – 10722), who informed Plaintiff she would not be able to obtain a loan modification and SLS would not take any payments from her, as it was planning to foreclose on January 10, 2012. Plaintiff was told the only option for her was to do a short sale or walk away from her home. Plaintiff questioned why SLS did not send a "Notice of Intent" to foreclose.

22.     Plaintiff was told by Julio that SLS would not send this documentation because Trott & Trott was handling the foreclosure and stated this information had already been sent by them. Plaintiff now was really concerned, as Trott & Trott did not represent SLS and had never responded to her mediation request.

23.     On January 26, 2012, Plaintiff received a response from Trott & Trott regarding the October 2011 request for a mediation meeting. Trott & Trott denied the mediation meeting indicating the request was received on October 13, 2010 and it should have been received

5

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

October 11, 2010. Trott & Trott further stated the upcoming foreclosure date would be March 27, 2012. (**Exhibit 12**, Trott & Trott, P.C. letter dated January 26, 2012) Plaintiff found this to be suspect as the request for mediation was timely provided and the initial Notice of foreclosure was dated October 12, 2011. (*See* **Exhibit 10**)

24. On May 8, 2012, Plaintiff received Notice of Default and Notice of Intent to Foreclose. Plaintiff called SLS to discuss the pending modification review with Bank of America. SLS, after many phone calls indicated it would investigate the matter. (**Exhibit 13**, SLS Notice of Default and Intent to Foreclose)

25. Plaintiff, while awaiting SLS's response, was surprised to find a Notice of Publication of foreclosure posted on her home by a totally different foreclosure law firm, Orlans Associates, P.C. (**Exhibit 14**, Notice of Foreclosure dated July 18, 2012) Plaintiff **was shocked and outraged to learn the sheriff's sale was set for August 21, 2012, when SLS had sent a letter dated August 8, 2012, advising Plaintiff was eligible for relief pursuant to the US Department of Justice and Attorney General global settlement agreement, including a significant principal reduction. (Exhibit 15**, SLS Letter dated August 8, 2012)

26. Yet, Defendants have purportedly assigned and attempted to foreclose on Plaintiff's property and this foreclosure, from the time of assignment, has been predicated on fraud, falsity and violation of express statutory language, including but not limited to, MCL 600.3204. The CWABS, Inc. Asset Backed Certificate Series 2005-17 had a cut-off date of December 1, 2005 and a close date of December 29, 2005. (**Exhibit 16**, SEC 424B5 Filing excerpts)

27. Plaintiff seeks and is entitled **to damages and injunctive relief as Plaintiff will suffer irreparable harm.**

## COUNT I
## LACK OF STANDING TO FORECLOSE UNDER MCL 600.3204
*(As to Defendants Bank Of New York Mellon f/k/a Bank of New York As Trustee For Certificateholders CWABS, Inc. Asset Backed Certificate Series 2005-17 and MERS, Inc.)*

28.    Plaintiff hereby incorporates Paragraphs 1 through 26, as though fully set forth herein.

29.    In this case, Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17, has attempted to fraudulently foreclose knowing that it does not have standing and cannot receive any legitimate interest on any assignment **five years** after the closing of the trust on the subject loan. The trust SEC 424B5 filing clearly identifies the **trust close date of December 29, 2005.** (*See,* **Exhibit 16,** pp. 12-13)

30.    The subject loan was securitized as established by the fact that the subject mortgage contains both a MERS clause and a Min#, and the attempted foreclosure was executed by a trust entity, Bank of New York as Trustee for the Certificateholders CWABS, Inc. **Asset Backed Certificate Series 2005-17. (***See,* **Exhibits 10, 14, 16). The trust closed on December 29, 2005,** making it a legal impossibility for there to be any valid assignment after the trust close date. (*See,* **Exhibit 16**)

31.    As such, the securitization process requires that the original lender convey all its interest in both the note and the mortgage.

32.    This also means that, Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17, predecessor Countrywide Home Loans, was paid in full. *See* the 2003 testimony of Cameron Cowan before a subcommittee of the U.S. House of Representatives. In his testimony, Cowan explains the securitization process, including the fact that the original lender transfers its interest and is paid

7

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

in full, while often! staying on as only the servicer. Said testimony can be found at http://financialservices.house.gov/media/pdf/110503cc.pdf.

33.     Based upon the MERS investor identification, the originator conveyed all its interest in the mortgage to MERS and in the note to the next entity in the securitization process, Bank of New York, Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 has provided no evidence of interest in either, and thus has no authority or standing to foreclose on the note. (If Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 asserts that the note was assigned post the December 29, 2005 trust close date, this admission would certainly be grounds for a REMIC investigation by the appropriate IRS division)

34.     Defendants have no standing to pursue a foreclosure by advertisement under MCL 600.3204, and this foreclosure should be declared void *ab initio* and title restored to Plaintiff.

<div align="center">

**COUNT II**
**DEFENDANTS HAVE PERPETRATED A FRAUD UPON**
**THE OAKLAND COUNTY CIRCUIT COURT BY ATTEMPTING TO**
**WRONGFULLY OBTAIN A JUDGMENT IN VIOLATION OF MCL 600.2907A**
*(As to Defendants Bank Of New York Mellon f/k/a Bank of New York As Trustee For Certificateholders CWABS, Inc. Asset Backed Certificate Series 2005-17 and MERS, Inc.)*

</div>

35.     Plaintiff hereby incorporates Paragraphs 1 through 34, as though fully set forth herein.

36.     Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 wrongfully initiated a foreclosure against Plaintiff's property located at 21501 Buttercrest St., Southfield, Michigan 48075, based on a mortgage given by Defendants' predecessor on November 25, 2005 to Countrywide Home Loans, in violation of MCL 600.2907a, which states:

<div align="center">8</div>

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

(1)     *A person who violates section 25 of chapter 65 of the Revised Statutes of 1846, being section 565.25 of the Michigan Compiled Laws, by encumbering property through the recording of a document without lawful cause with the intent to harass or intimidate any person is liable to the owner of the property encumbered for all of the following:*

1.     *All of the costs incurred in bringing an action under section 25 of chapter 65 of the Revised Statutes of 1846, including actual attorney fees.*
2.     *All damages the owner of the property may have sustained as a result of the filing of the encumbrance.*
3.     *Exemplary damages.*

(2)     *A person who violates section 25 of chapter 65 of the Revised Statutes of 1846, by encumbering property through the recording of a document without lawful cause with the intent to harass or intimidate any person is guilty of a felony punishable by imprisonment for not more than 3 years or a fine of not more than $5,000.00, or both. MCL 600.2907a*

37.     Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 is not the legitimate owner of the Note, if based upon an assignment after the closure of the trust (*See,* **Exhibit 16**) It then unlawfully had a fraudulent assignment of mortgage conveyed to itself by MERS in order to foreclose on the subject property even though it did not comply with the foreclosure by advertisement statute. (*See,* **Exhibits 14, 16**)

38.     Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 cannot receive an interest in the note via any alleged assignment as the trust entity itself is closed.

39.     The Oakland County Circuit Court should enjoin the sheriff's sale due to the lack of standing by Defendant Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17.

40.     In order to effectuate a valid foreclosure by advertisement, Defendant Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc.

9

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Asset Backed Certificates 2005-17 had to assert its own legal rights and interests and cannot rest its claim to relief on the legal rights or interests of third parties. *Feiger v. Comm'r of Ins,* 174 Mich App 467,471; 437 NW2d 271 (1988). In this case, Defendant Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17, could only act on its own behalf, and it is evident it did not have the ownership interest in the note, otherwise an assignment would not have been necessary.

41.      Defendant Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 does not qualify to foreclose on the subject property and does not have a valid interest in the note. Thus, it lacks standing to execute a foreclosure by advertisement. This foreclosure should be declared void *ab initio.*

42.      As Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 has failed to show any interest in the note and mortgage, it has not suffered an injury in fact, and lacked standing to bring the instant foreclosure action.

43.      The issue of lack of standing may be brought at any time and goes to the issue of subject matter jurisdiction, which may never be waived. *United States v. Cotton,* 535 U.S. 625 (2002). *See also, People v. Lown* 794 N.W.2d 9, 488 Mich 242 (2011).

44.      Defendant Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 knew or should have known that the instant foreclosure is being wrongfully conducted, and that it has no standing to bring this action against Plaintiff, yet it has pursued these legal avenues to the detriment of Plaintiff.

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

## COUNT III
### QUIET TITLE: MCL 600.605 AND MCL 600.2932
*(As to Defendants Bank Of New York Mellon f/k/a Bank of New York As Trustee For Certificateholders CWABS, Inc. Asset Backed Certificate Series 2005-17 and MERS, Inc.)*

45.     Plaintiff hereby incorporates Paragraphs 1 through 44, as though fully set forth herein.

46.     Plaintiff demands quiet title to a parcel of real estate whereas, Defendant Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 wrongfully inflicted and forced the subject property into foreclosure knowing that MCL 600.3201, et seq., did not authorize it to foreclose without proper standing and ownership interest.  Plaintiff's rights at law have been maliciously violated.

47.     Defendant Bank of New York Mellon f/k/a Bank of New York as Trustee for Certificate Holders of CWABS, Inc. Asset Backed Certificates 2005-17 now claims an interest in the 21501 Buttercrest St., Southfield, Michigan 48075 property, which is inconsistent with or an adverse interest claimed by Plaintiff by virtue of an alleged assignment of mortgage or transfer, which served to transfer nothing.

48.     Plaintiff's mortgage was assigned to Defendant Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset Backed Certificate Series 2005-17, but the assignment would be invalid as it would be beyond the closing of the trust and in violation of the IRS Code, Section 860, Real Estate Mortgage Investment Conduit (REMIC).

49.     Plaintiff is entitled to have the sheriff's sale set aside and the mortgage foreclosure declared void *ab initio*, based on its fraudulent creation and title quieted in themselves.

11

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

**COUNT IV**
**IN VIOLATION OF MCL 600.3205c(1) and MCL 600.3205c(3)**
*(As to all Defendants)*

50.     Plaintiff hereby incorporates Paragraphs 1 through 49, as though fully set forth herein.

51.     MCL 600.3205c(1) states that "[i]f a borrower has, either directly or through a housing counselor, contacted a person designated under section 3205a(1)(c) under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification."

52.     Plaintiff applied for a meeting with a representative of their mortgage lender, Bank of America, in accordance with MCL 600.3205a(1)(c) and MCL 600.3205b.

53.     Despite the fact that Plaintiff requested a modification under HAMP and qualified for such a modification, Defendant Bank of America never had an in-person meeting with Plaintiff, pursuant to MCL 600.3205(1).

54.     Plaintiff met and still meets Home Affordable Mortgage Program (HAMP) guidelines for a modification. **In fact, SLS sent Plaintiff a letter encouraging Plaintiff to reapply as part of the US Department of Justice's national settlement agreement with state attorney generals, including the Michigan State Attorney General.** (*See*, **Exhibits 15**)

55.     Defendants violated the law by not working with Plaintiff to determine whether she qualified for a loan modification as required by MCL 600.3205c(1).

56.     Defendants violated the law by not following the guidelines dictated by the Home Affordable Mortgage Program, as required by MCL 600.3205.

57.     Defendants violated the HAMP guidelines which are incorporated into the state statute by proceeding to a Sheriff's sale while Plaintiff's mortgage loan was being evaluated for

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

a HAMP modification, as the HAMP guidelines explicitly state that foreclosure activity is to be suspended pending that evaluation.

58.     MCL 600.3205a(1)(g) states that "if the borrower and the person designated under subdivision (c) do not agree to modify the mortgage loan but it is determined that the borrower meets criteria for a modification under section 3205c(1) which incorporates Section 3205c(3), and foreclosure under this chapter is not allowed under section 3205c(7), the foreclosure of the mortgage will proceed before a judge instead of by advertisement."

59.     MCL 600.3205c(7) states that "[i]f the determination under subsection (1) is that the borrower is eligible for a modification, the mortgage holder or mortgage servicer may foreclose the mortgage under this chapter if both of the following apply: (a) The person designated under section 3205a(1)(c) has in good faith offered the borrower a modification agreement prepared in accordance with the modification determination. (b) For reasons not related to any action or inaction of the mortgage holder or mortgage servicer, the borrower has not executed and returned the modification agreement within 14 days after the borrower received the agreement." Neither of these factors is applicable to the present case.

60.     Defendants violated MCL 600.3205a(1)(g) by attempting foreclose on Plaintiff's home via advertisement.

61.     Defendants violated Section 3205(c)(6) by proceeding with a non-judicial foreclosure of Plaintiff's home when she qualified for a loan modification pursuant to the statute.

62.     MCL 600.3205c(5)(a) requires that a lender send borrowers a copy of their calculations relative to their eligibility for a loan modification. Plaintiff was never sent a copy of the calculations relative to her modification pursuant to MCL 600.3205c(5)(a).

63.     MCL 600.3205c(8) states that "[i]f a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an

13

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure. If a borrower files an action under this section and the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, and the borrower is eligible for modification under subsection (1), and subsection (7) does not apply, **the court shall enjoin foreclosure of the mortgage by advertisement and order that the foreclosure proceed under chapter 31."**

64.     As a direct result of Defendants' violation of MCL 600.3205, Plaintiff was subjected to an illegal foreclosure on the property.

## COUNT V
## VIOLATION OF THE FHA
### *(As to Bank of America)*

65.     Plaintiff hereby incorporates Paragraphs 1 through 64, as though fully set forth herein.

66.     Plaintiff Sharai Balford is Black or of African-American descent.

67.     Plaintiff's race or color as "Black or African American" is set forth on various Uniform Residential Loan Applications (Form 1003) held by Defendant's predecessor servicer Bank of America.

68.     Plaintiff's property is located in Southfield, Michigan.

69.     Defendant and Defendant's predecessor servicer Bank of America, at all relevant times, was aware of the location of Plaintiff's property and Plaintiff's race.

*Non-Discrimination Requirements of the HAMP Program*

1.      The Home Affordable Modification Program (HAMP) repeatedly reminds lenders and loan servicers, such as Defendant Bank of America, that implementation of loan modification programs must take place free of any discrimination against borrowers based on protective class basis:

14

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

**Compliance with Applicable Laws**

Each servicer (and any subservicer it uses) must be aware of, and in full compliance with, all federal, state, and local laws (including statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions) – including, but not limited to, the following laws that apply to any of its practices related to the HAMP:

. . .

- Servicers' modifications under this program must comply with the Equal Credit Opportunity Act and the Fair Housing Act, which prohibit discrimination on a prohibited basis in connection with mortgage transactions. *Loan modification programs are subject to the fair lending laws, and servicers and lenders should ensure that they do not treat a borrower less favorably than other borrowers on grounds such as race*, religion, national origin, sex, marital or familial status, age, handicap, or receipt of public assistance income *in connection with any loan modification. These laws also prohibit redlining.* FEDERAL RESERVE SUPPLEMENTAL DIRECTIVE 09-01, at p. 12 (April 6, 2009) (emphasis added); *see also* HOME AFFORDABLE MODIFICATION PROGRAM GUIDELINES, at p. 9 (March 4, 2009).

70.     Defendant Bank of America has entered into an agreement with the Federal National Mortgage Association (FHMA or, more commonly "Fannie Mae"), entitled a "Commitment to Purchase Financial Instrument and Servicer Participation Agreement".[1]  In the Servicer Participation Agreement (SPA), Defendant's servicer Bank of America., on information and belief, warranted that it could comply with the anti-discrimination principles of all applicable laws, including the anti-discrimination provisions of the Fair Housing Act, the Equal Credit Opportunity Act and state anti-discrimination statutes:

Servicer is in compliance with, and covenants that all Services will be performed in compliance with, all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements, including, but not limited to, . . . the Equal Credit Opportunity Act, 15 USC § 701 et seq., . . . Fair Housing Act and other Federal and state laws designed to prevent unfair, discriminatory or

---

[1] *See,* HAMP Servicer List (available at http://makinghomeaffordable.gov/contact_servicer.html).

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

predatory lending practices and all applicable laws governing tenant rights.

71. Defendant Bank of America, on information and belief, has also entered into a Subsequent Certification with Fannie Mae. This required Defendant's servicer Bank of America on information and belief, to represent that it *implemented internal controls to assure compliance with the fair lending laws:*

> **Scope of the Internal Controls Program.**
>
> . . .
>
> [S]ervicers are required to certify that they have developed and implemented an internal controls program to monitor and detect loan modification fraud and to monitor compliance with applicable consumer protection and fair lending laws, among other things, as described in the SPA.[2]
>
> . . .
>
> 2. Servicer has developed and implemented an internal control program reasonably designed to monitor and detect loan modification fraud and to monitor compliance with applicable consumer protection and fair lending laws, among other things, as provided in Section 4 of the Financial Instrument.[3]

72. The Treasury Department provided Defendant's servicer Bank of America and other lenders with several examples of control objectives:

> **II. Solicitation of Borrowers**
>
> . . .
>
> • Borrowers claiming a hardship who are current or are less than 60 days delinquent and who contact the servicer about a HAMP modification are screened for eligibility.

---

[2] *See* FEDERAL RESERVE SUPPLEMENTAL DIRECTIVE 10-06 (June 29, 2010) (available at https://www.hmpadmin.com/portal/docs/hamp_servicer/sd1006.pdf (accessed Aug. 11, 2010))
[3] *Id.* at B-3, *Exhibit B, Form of Subsequent Certification.*

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

### III. Investor and Third Party Analysis and Outreach

. . .

- Servicers have a documented process to ensure that borrower-contact staff has accurate information about investor participation.

. . .

. . .

### V. Appropriately Forestalling Foreclosure Initiations/Sales and Offering Alternative Foreclosure Prevention Programs

- Servicers suspend foreclosure for HAMP eligible borrowers in a timely fashion until HAMP evaluation is completed.

. . . [4]

73. This claim is set forth because of Defendant Bank of America's discrimination on grounds of race or color in its implementation of the HAMP program.

74. Defendant Bank of America's discriminatory actions on grounds of race or color denied Plaintiffs the rights to which they entitled to contract for and otherwise obtain financing or refinancing in housing-related transactions, in violation of the FHA, 42 U.S.C. § 3605.

75. Defendant Bank of America's discrimination in violation of the FHA has caused injuries and damages to Plaintiff.

### RELIEF

WHERFORE, Plaintiff request that this Honorable Court:

A. Stay all proceedings for sheriff's sale and possession of property located at 21501 Buttercrest St., Southfield, Michigan 48075, pending a resolution of Plaintiff's legal and equitable claims.

---

[4] *Id.* at C-1, Exhibit C, Examples of Control Objectives.

17

B.    Declare the mortgage foreclosure void *ab initio*, based upon the numerous legal

violations articulated in Plaintiff's Complaint.

C.    Award costs and attorney fees, and any other relief this Honorable Court deems

fair and just.

Respectfully submitted,

VANESSA G. FLUKER, ESQ., PLLC

/s/Vanessa G. Fluker
Vanessa G. Fluker (P64870)
Attorney for Plaintiff
2920 East Jefferson, Suite 101
Detroit, MI  48207
Phone (313) 393-6005
vgflawyer@sbcglobal.net

Dated: August 19, 2012

## JURY DEMAND

Plaintiff Sharai Balford, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

VANESSA G. FLUKER, ESQ., PLLC

/s/Vanessa G. Fluker
Vanessa G. Fluker (P64870)
Attorney for Plaintiff
2920 East Jefferson, Suite 101
Detroit, MI  48207
Phone (313) 393-6005
vgflawyer@sbcglobal.net

Dated: August 19, 2012

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

18

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 1

Page 1 of 15)



LIBER 36953 PAGE 067

12851
LIBER 36953 PAGE  67
$52.00 MORTGAGE
$4.00 REMONUMENTATION
01/13/2006 10:11:55 A.M.  RECEIPT# 5086

PAID   RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

WESTMINSTER TITLE AGENCY, INC.
RECORDED BY FIRST AMERICAN TITLE

# MORTGAGE
[Space Above This Line For Recording Data]

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

17395                    00012251157911005
[Escrow/Closing #]         [Doc ID #]

MIN 1000157-0006162041-1

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   NOVEMBER 25, 2005   , together with all Riders to this document.
(B) "Borrower" is
SHARAI BALFORD  ,A MARRIED WOMAN , AND  DERRICK BALFORD, HER HUSBAND

Borrower's address is
21501 BUTTERCREST, SOUTHFIELD, MI 48075
Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is the mortgagee under this Security Instrument. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK                    . Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613

O.K. - KB



CONVVA
● MICHIGAN-Single Family-UNIFORM INSTRUMENT WITH MERS
2082T-MI (01/04)(d)                    Page 1 of 11



N00017195

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

LIBER 36953 PG 068

DOC ID #: 00012251157911005

(E) "Note" means the promissory note signed by Borrower and dated  NOVEMBER 25, 2005    . The Note states that Borrower owes Lender
ONE HUNDRED FORTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 148,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  DECEMBER 01, 2035     .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

            COUNTY                 of                OAKLAND
      [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Initials: _____

LIBER 36953 PG 069

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Parcel ID Number: 762435302027

DOC ID #: 0001225115791005
which currently has the address of

21501 BUTTERCREST, SOUTHFIELD
[Street/City]

Michigan    48075    ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any,

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

LIBER 36953 PG070

DOC ID #: 00012251157911005

or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessment shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

LIBER 36953 PAGE 071

DOC ID #: 00012251157911005

and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CONV/VA
• MICHIGAN-Single Family-UNIFORM INSTRUMENT WITH MERS
2006Z-MI (05/08)                    Page 5 of 11

Initials 

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

LIBER36953 PG072

DOC ID #: 0001225115791l005

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

Initials: 

LIBER 36953 PG 073

DOC ID #: 0001225115791005

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11.** Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.** Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.



CONVVA
• MICHIGAN-Single Family-UNIFORM INSTRUMENT WITH MERS
23627.44 (05/08)                                                 Page 7 of 11

LIBER 36953 PG 74

DOC ID #: 0001225115791005

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

CONANA

® MICHIGAN-Single Family-UNIFORM INSTRUMENT WITH MERS

2006T MI (01/04)                  Page 8 of 11

Initials: _BB_
_23._

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

LIBER36953 PG075

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

DOC ID #: 00012251157911005

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance

CONV/VA
• **MICHIGAN**-Single Family-**UNIFORM INSTRUMENT WITH MERS**
2006?-VI (01/04)                    Page 9 of 11

LIBER36953 PG076

DOC ID #: 00012251157911005

which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        *Shanai Balford*                          (Seal)
                                 SHARAI BALFORD                          -Borrower

_____        *Derrick Balford*                         (Seal)
                                 Derrick Balford                          -Borrower

                                 _____               (Seal)
                                                                         -Borrower

                                 _____               (Seal)
                                                                         -Borrower

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

LIBER 36953 PG077

DOC ID #: 00012251357911005

STATE OF MICHIGAN.

Acknowledged before me in Oakland

County, Michigan, on November 25, 2005

Sharai Balford, a married Woman, and Derrick

Balford, her husband

_Diane M. Lauer_

DIANE M. LAUER
NOTARY PUBLIC - MICHIGAN
WAYNE COUNTY
MY COMMISSION EXPIRES JULY 17, 2006
ACTING IN ___Oakland___

Notary Public, State of Michigan,
County of
My commission expires
Acting in the County of

This instrument was prepared by
RENEE MICHAEL
COUNTRYWIDE HOME LOANS, INC.
27777 FRANKLIN RD. STE 760, SOUTHFIELD, MI 48034

CONVVA
● MICHIGAN-Single Family-UNIFORM INSTRUMENT WITH MERS
2D027-MI (01/04)                    Page 11 of 11

LIBER 36953 PG078

Exhibit A

Property situated in the City of Southfield, Oakland County, State of Michigan:

Lot 87 of Lorraine Subdivision, according to the plat thereof as recorded in Liber 103, Page(s) 37 and 38 of Plats, Oakland County Records.

103037

Commonly known as: 21501 Buttercrest

Sidwell No.: 76-24-35-302-027

LIBER36953 PG079

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

[Space Above This Line For Recording Data]

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
RENEE MICHAEL
COUNTRYWIDE HOME LOANS, INC.

27777 FRANKLIN RD. STE 760
SOUTHFIELD
MI 48034

17195                    00012251157911005
[Escrow/Closing #]           [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this TWENTY-FIETH      day of
NOVEMBER, 2005    , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
21501 BUTTERCREST
SOUTHFIELD, MI 48075
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family
CONV
● BC - ARM Rider
2U193-XX (01/01)(d)                    Page 1 of 3                         Initials:

 

LIBER36953 PG080

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

DOC ID #: 00012251157911005

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 9.000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of DECEMBER, 2008, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.500 % or less than 9.000 %. Thereafter, my interest rate will never be increased or decreased on any Change Date by more than single ONE & ONE-HALF percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 16.000 % or less than 9.000 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

CONV
• BC - ARM Rider
2U183-XX (01/01)                    Page 2 of 3                    Initials:

LIBER 36953 PG 0 8 1

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

DOC ID #: 00012251157911005

If all or any part of the Property or any interest in the Property is sold or transferred or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
SHARAI BALFORD                    - Borrower

_____ (Seal)
Derrick Balford                   - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

CONV
● BC - ARM Rider
2U193-XX (01/01)                  Page 3 of 3

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 2

# Hardship Letter

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Derrick and Sharai Balford
21501 Buttercrest
Southfield, MI 48075
July 29, 2010

Bank of America
Home Loans Servicing, LP
390 Interlocken Crescent
Suite 310
Broomfield, CO 80021

RE: **Account Number# 122511579**

BAC Home Loans Servicing, LP:

This letter is being sent to you in response to your previous correspondence. Be advised that we did not fail to conform to the guidelines of a trial modification as we have never been presented the opportunity. The following information was never provided to us:

- Trial modification documentation offer letter that defines the program that will be utilized for loan modification
  - o Trial modification documentation that provides an explanation as to the calculation that was used to determine the 'trial payment amount'
  - o Guidelines and requirements of Making Home Affordable (or program that will be used for the loan modification)
- Summary of where the monies that are collected during the 'loan modification' would be applied (Will property taxes and Home Owner Insurance be inclusive)
- Signature from us acknowledging that we reviewed and accepted the documentation supplied to setup a loan modification

You also stated that we were not eligible for the federal government's Home Affordable Program but failed to provide an explanation as to why we are not eligible. We are also unclear how this was determined. We provided financial information to you over (6) months ago and yet all Bank of America has consistently done was informed us of how we did not qualify but have not provided the reasons and proof why we did not qualify. It is the responsibility of Bank of America to show proof as to why we did not qualify. Just like we had to present financial information in detail to you, it is unlawful to keep sending letters to us stating that we did not qualify for a program without proving to us how we 'allegedly' did not meet the criteria. It is also equally insulting that Bank of America has failed to show us guidelines to any of the 'alleged' programs that we have not been qualified for. It is our belief that Bank of America was bailed out by Congress and received billions of dollars to help people like us keep our house; however, the lack of documentation to support your claims speaks for itself. We have received (3) letters to

**2**

Hardship Letter for Derrick and Sharai Balford
**Account Number 122511579**

Page 2

date that state that we do not qualify for programs that we did not receive the proper documentation to proceed and qualify for each program. Please provide us with a detailed list of qualifications and documentation for each program (Making Home Affordable, Michigan's Hardest Hit, Bank of America 'Trial Modification', etc).

You have fraudulently stated that we have not qualified for any programs and yet President Obama has released yet another program 'Michigan Hardest Hit' program and yet we have not been offered any type of relief from Bank of America.

It is our understanding that based on recent Press releases and media coverage that 30% of the principle balance will be reduced to assist borrowers in obtaining a reasonable home modification loan under the Making Homes Affordable program. We are making it clear that our intentions are to find an affordable program that will provide a legitimate loan modification. For the first loan we were taken advantage of by the extraordinary high interest rates. It is imperative that Bank of America works with us to find a favorable loan modification that will allow us to get back on track and save our home.

We have also confirmed that everyone we know that was provided a temporary mortgage adjustment was denied a loan modification with Bank of America after supplying all of the requested information. It is imperative that we are able to get the loan modification that the President has ensured many Americans that they are entitled to.

The proceeding information outlines why our financial situation has changed and why we are having difficulty making payments on our mortgage loan.

- Sharai Balford was laid off from job since March 2009; however, my husband is employed and has been for ten years. I am requesting that his financial information be reviewed after we receive documentation and qualifications stating all of the programs that were outlined in previous correspondences from Bank of America.
- A financial hardship was undergone since sixty percent of our income was lost when I was laid off

My husband and I have paid our mortgage since 2006 on time. We are interested in working with Bank of America and finding an acceptable loan modification program.

Regards,


Derrick and Sharai Balford

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President Barack Obama
The White House
1600 Pennsylvania Avenue
NW
Washington, DC 20500

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  WHITE HOUSE OFFICE
   WASHINGTON, D.C. 20500    ☐ Agent
                              ☐ Addressee

B. Received by (Printed Name)       C. Date of Delivery
                                    AUG 13 2010

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0001 8275 2768

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Brian Moynihan
CEO President of Bank of America
100 North Tryon Street
Charlotte, NC 28255

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)    AUG 0 6 2010

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)    7006 0100 0001 8275 2775

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Bank of America
Home Loans Servicing, LP
390  Interlocken  Crescent
Suite  310
Broomfield, Co  80021

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)   7006 0100 0001 8275 2782

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 3



Bank of America
Mailstop CA6-921-01-03
450 American Street
Simi Valley, CA 93065

Sharai Balford                    1665
21501 Buttercrest St
Southfield, MI 48075

August 2, 2010                                              **Loan Number: 122511579**

Property Address: 21501 Buttercrest St
                  Southfield, MI 48075

Dear Sharai Balford:

My name is Sandor J Korossy and I am your dedicated home loan specialist. The property listed above is nearing foreclosure and I want to help you avoid that from happening. I will be calling you soon to discuss our Cooperative Short Sale Program. This may be your last opportunity to prevent foreclosure.

What is a Short Sale?

In a short sale, you list the property for sale at the fair market value and when you sell your property, you pay off the mortgage with the proceeds. You are released from the loan obligation even if you sell your property for less than what you owe on the loan. In addition, after a successful short sale under this program, we will forgive any remaining balance on the above referenced account.

Additional benefits included in a Cooperative Short Sale are:

* You have up to 4 months to sell your property and this may be extended up to 1 year
* You may be eligible to receive a relocation assistance payment of up to $3000
* We will support you throughout the process to make this as simple and easy as possible

*I know this may be a difficult time for you and my goal is to help you make this process as simple as possible. I will follow up with you soon. In the meantime, you can reach me directly at 805.520.5124 Monday through Friday 8 am - 5 pm Pacific. Or, you can email me at sandor.korossy@bankofamerica.com. All of your information will be kept confidential.*

If you have any questions during this process, please do not hesitate to call me. I am here to help.

Sincerely,

**Bank of America** 🦅 Home Loans

Sandor J Korossy
High Performance Outreach Specialist
BAC Home Loans Servicing, LP

*3*

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 4



**Bank of America**

Customer Relationship Advocacy

August 31, 2010

Sharai Balford
21501 Buttercrest Street
Southfield, MI 48075

Bank of America account ending: 1579

Dear Ms. Balford:

Thank you for contacting our office with your correspondence dated July 29, 2010, addressed to Bank of America, regarding the above-referenced loan. Your concerns were forwarded to my attention for review and reply. Regrettably, my recent attempts to contact you to discuss the concerns you raised have been unsuccessful.

In order for Bank of America to review your request for payment assistance, we will require the following information:

- Letter of hardship
- Two most recent bank statements
- Two most recent pay stubs
- Breakdown of monthly expenditures

Please fax the requested information to the attention of the undersigned at 1.866.786.8563 by September 14, 2010. Once the information is received, it will be forwarded to our Home Retention Division for review and consideration. It is important for you to know that assistance is not guaranteed and is depended on several factors; however, Bank of America will review all possible options in an effort to assist you.

Ms. Balford, thank you for this opportunity to be of service. Should you require immediate assistance, please contact our Customer Service Department directly at 1.800.669.6607, Monday through Friday, 8 a.m. to 5 p.m., Pacific.

Sincerely,

Thomas Carter
Customer Advocate
Customer Relationship Advocacy

---

Bank of America, CORPORATE CENTER
100 North Tryon Street, Charlotte, NC 28255-0001

©Recycled Paper

**4**

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 5

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# Derrick and Sharai Balford
# 21501 Buttercrest
# Southfield, MI 48075

September 9, 2010

Mr. Thomas Carter
Bank of America
Home Loans Servicing, LP
390 Interlocken Crescent, Suite 310
Broomfield, CO 80021

**RE:  Response to Thomas Carter August 31 Correspondence**
**Account Number# 122511579**

Dear Mr. Carter:

This letter is being sent to you in response to your correspondence dated August 31, 2010; which stated that you were not able to contact us to discuss our concerns; however, we did not receive any correspondence from you prior to August 31, 2010. The following chart outlines the attempts made by us to contact you:

| Date | Time |
|---|---|
| August 10, 2010 | 1:00 pm |
| August 17, 2010 | 9:00 am |
| August 20, 2010 | 8:00 am |
| September 5, 2010 | 10:00 am |

It is very disturbing that you did not respond to any of our calls. We also went as far as to have each customer service representative write an internal email to you whenever we called.  Mr. Carter, not only did you not respond to our calls, we have yet to receive the information that was requested in our documentation sent on July 29, 2010, in our Hardship Letter.

We explicitly asked for the following:

- Trial modification documentation offer letter that defines the program that will be utilized for loan modification
  - Trial modification documentation that provides an explanation as to the calculation that was used to determine the 'trial payment amount' for our mortgage payment.

*5*

Response to Thomas Carter document dated August 31, 2010
**Account Number 122511579**

Page 2

- o  Guidelines and requirements of Making Home Affordable Program (or program that will be used for the loan modification)
- Summary of where the monies that are collected during the 'trial loan modification' would be applied (will property taxes and Home Owner Insurance be inclusive)
- Signature from us acknowledging that we reviewed and accepted the documentation supplied to setup a loan modification

To date, we have not received this information from Bank of America. We have received (3) letters stating that we do not qualify for programs that we did not receive the proper documentation for, in order to proceed and qualify for each program. Please provide us with a detailed list of qualifications and documentation for each program (Making Home Affordable, Michigan's Hardest Hit, Bank of America 'Trial Modification', etc).

As requested, included in this fax, I have provided the following information to Bank of America for the second time:

- Hardship Letter (Originally provided on July 29, 2010)
- Bank Statement (Originally provided on October 1, 2009)
- Pay Stubs (Originally provided on October 1, 2009)
- Breakdown of monthly expenditures (see below)

Please find the following monthly breakdown of expenditures:

- Car Payments - $760.00
- Car Insurance - $360.00
- Utilities - $310.00
- Mortgage Payments - $1949.00

We are writing this letter in an attempt to obtain a favorable loan modification. We have provided all of the requested information. Please comply with our request to ensure these issues will be resolved.

Regards,


Derrick and Sharai Balford

Cc: file

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Hardship Letter for Derrick and Sharai Balford
**Account Number 122511579**

Page 3

Cc:  President Barack Obama
      The White House
      1600 Pennsylvania Avenue NW
      Washington, DC 20500


      Brian Moynihan, CEO President of Bank of America
      100 North Tryon Street
      Charlotte, North Carolina 28255

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 6

# Derrick and Sharai Balford
## 21501 Buttercrest
## Southfield, MI 48075

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

October 18, 2010

Mr. Thomas Carter
Customer Relationship Advocate
Bank of America
Home Loans Servicing, LP
390 Interlocken Crescent, Suite 310
Broomfield, CO 80021

**RE: Response to Thomas Carter Document dated October 5, 2010**
**Account Number# 122511579**

Mr. Carter:

In your correspondence dated October 5, 2010, you directed us to visit www.bankofamerica.com/hasp, to estimate a reduced payment with the payment-to-income calculator through the Making Home Affordable (MHA) program, in response to our request of receiving the following information:

- Trial modification documentation offer letter that defines the program that will be utilized for loan modification for our **individual mortgage payment**
  - Trial modification documentation that provides an explanation as to the calculation that was used to determine the 'trial payment amount'
  - Guidelines and requirements of Making Home Affordable Program (or program that will be used for the loan modification)
- Summary of where the monies that are collected during the 'loan modification' would be applied, (will property taxes and Home Owner Insurance be inclusive)
- Signature from us acknowledging that we reviewed and accepted the documentation supplied to setup a loan modification

Please help us understand how the website provided has addressed any of our earlier concerns outlined in correspondences dated July 29, 2010, and September 9, 2010. Your reference to the information on the website provides a general summary of what factors *may* be included in a loan modification with Bank of America. In our research, this information was determined to be non-specific to our exclusive mortgage condition. We have repeatedly requested the specific decisive factors that were used to determine why we were denied a loan modification. Again, please provide us with a detailed list of qualifications and

6

Response to Thomas Carter document dated October 5, 2010
**Account Number 122511579**

Page 2

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

documentation for each program (Making Home Affordable, Michigan's Hardest Hit, Bank of America 'Trial Modification', etc).

It is our understanding that each program has a set criteria and calculation, that will be used to determined a trial modification for each individual mortgage 'case'. We have received three (3) letters to date that state that we do not qualify for programs, that we did not have an opportunity to apply for, due to lack of receiving the proper documentation from you, to begin the process to determine eligibility. Again, please supply the information Bank of America used to ascertain that we did not qualify for each program we supplied the requested documentation for. We have provided the documents requested, including financial information, continually over the past year.

In your documentation dated August 31, 2010, you stated *'It is important for you to know assistance is not guaranteed and is depended on several factors: however, Bank of America will review all possible options in an effort to assist you'.* We are not sure we understand Bank of America's position. Based on this statement, it is perceived that Bank of America is unwilling to provide detailed information as to what 'factors' will be used to determine our eligibility for a loan modification. Also, it is perceived our attempts and requests for obtaining a loan modification from Bank of America, will be denied based on the 'disclaimer' that was provided in your last correspondence.

It greatly concerns us that you indicated your research shows a 'trial modification' was mailed to us on October 16, 2009, (which we have not received to date). Your documentation of October 5, 2010, stated that you enclosed the 'alleged' information at that time as well. As indicated in our correspondence on July 29, 2010, be advised that we did not fail to conform to the guidelines of a trial modification, as we have not been presented the opportunity. We did not receive the 'alleged' MHA trial payment offer on October 16 2009, and you failed to enclose a copy of the documentation in your correspondence dated October 5, 2010.

You stated that the 'alleged' trial payment was calculated at $957.28. Again, we would like to know what decisive factors were involved in the calculation that was used to determine the payment amount. Would this amount include insurance and escrow? What happens at the end of the trial modification?

There was a recent article that appeared this month in one of the major newspapers that outlined how Bank of America was being sued by various home owners based on their 'unwillingness' to provide loan modifications. It conveyed that hundreds of home owners were offered 'trial payments' that were paid during a trial period; however, at the end of the trial period no loan modifications were

Response to Thomas Carter document dated October 5, 2010
**Account Number 122511579**

Page 3

granted. These home owners, just like us, received letters of denial with no just cause.

The information below was originally faxed on September 10, 2010, and again today. The corresponding 'updated' documentation attached is as follows:

- Letter of Hardship (Originally sent July 29th, 2010)
- Bank Statements (Originally sent October 1, 2009)
- Pay Stubs (Originally provided on October 1, 2009)
- Monthly expenditures
- All correspondences to date

In addition, a certified copy will be sent in the mail.

Regards,


Derrick and Sharai Balford


Cc: President Barack Obama
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500


Brian Moynihan, CEO President of Bank of America
100 North Tryon Street
Charlotte,, North Carolina 28255


file

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 7



**Bank of America**
Home Loans

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

November 15, 2010

Sharai Balford
21501 Buttercrest Street
Southfield, MI  48075

Bank of America account ending: 1579

Dear Ms. Balford:

Thank you for contacting Bank of America with your fax dated October 19, 2010, regarding the above-referenced loan.  Your concerns were forwarded to my attention for review and response.  Regrettably, my recent attempt to contact you to discuss your concerns was unsuccessful.

The concerns addressed in your letter require further detailed analysis.  We will respond to your inquiry after we have completed our investigation.

Ms. Balford, thank you for this opportunity to be of service.  In the event you require further assistance, please contact our Customer Service Department at 1.800.669.6607.

Sincerely,

*Michelle Maxie*

Michelle Maxie
Customer Advocate
Customer Relationship Advocacy

Customer Relationship Advocacy, CA6-919-02-39
450 American St., Simi Valley, CA 93065

⌂ Equal Housing Lender.

♻Recycled Paper

**7**

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 8

**Bank of America** 〉〉〉 Home Loans

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

December 9, 2010
Sharai Balford
Page Two

In order for Bank of America's Home Retention Division to review your loan for possible payment assistance, the following items are required:

- Evidence of income (2 most recent pay stubs)
- Bank statements (2 most recent)
- Last year's tax returns
- Monthly expenditure information

Please forward the required information to the attention of the undersigned at the mailing address below or by way of fax at 1.866.786.8563. You may also contact our Home Retention Division directly at 1.800.669.6650. Once received, this information will be forwarded to our Home Retention Division for review and consideration. It is important for you to know that assistance is not guaranteed and is dependent on several factors; however, Bank of America will look at every option in an effort to assist you.

In our previous letter dated October 5, 2010, we provided you the Bank of America modification website www.bankofamerica.com/hasp to review the different types of modifications we participate in and a list of the qualifications. A list of the different modifications that we participate in is provided at the bottom of the homepage. You may also visit the MHA website www.makinghomeaffordable.gov to review the qualifications of these particular program.

Lastly, Bank of America is actively working with the Obama Administration on the Hardest Hit Fund that was announced by the Administration and Treasury earlier this year. At this time, there is more information required before this program can be implemented in your state. You may review information regarding Michigan's hardest hit at their website www.michigan.gov/hardesthit.

Ms. Balford, thank you for this opportunity to be of service. As always for questions about your loan, you may contact our Customer Service department at 1.800.669.6607.

Sincerely,

*Michelle Maxie*

Michelle Maxie
Customer Advocate
Customer Relationship Advocacy

Enclosures

Customer Advocacy Relationship, CA6-919-02-39
400 National Way, Simi Valley, CA, 93065



Recycled Paper

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 9

FTC v. Countrywide Home Loans, Inc. Settlement Fund
c/o Gilardi & Co. LLC
P.O. Box 719088
San Diego, CA 92171-9088

CLAIM #: FTCCHL-2042507-4

SHARAI BALFORD
21501 BUTTERCREST ST
SOUTHFIELD, MI   48075-3986                    07343

1709368

FTC v. Countrywide Home Loans, Inc.
Claims Administration Center
P.O. Box 808054
Petaluma, CA 94975-8054
1-888-230-3196

**FTC v. Countrywide Home Loans, Inc.**

Dear Consumer,

The Federal Trade Commission ("FTC"), the nation's consumer protection agency, reached an agreement with Countrywide to settle charges that the company engaged in unlawful practices in servicing consumers' home mortgage loans.

The FTC settlement includes a redress fund to compensate eligible consumers whose mortgage loans were serviced by Countrywide between January 2005 and June 2008. Countrywide also agreed to stop the illegal servicing practices and make major changes to its practices.

You are receiving this check because Countrywide serviced your mortgage loan during the relevant time period and, according to the FTC, either the company charged you excessive fees, or you were in Chapter 13 bankruptcy and unlawful practices occurred in the servicing of your loan. The enclosed check is your share of the money the FTC was able to collect.

**Please cash the enclosed check no later than September 19, 2011.** After that, your check could bounce and you could be charged a bank fee. Please note that the FTC never requires the payment of money up-front, or requests additional information, before consumers cash refund checks issued to them.

Please call us toll-free at 1-888-230-3196 if you have any questions.

To learn more about this case, visit: http://www.ftc.gov/countrywide.

Sincerely,

Claims Administration Center

---

NOTE: SEE REVERSE FOR SECURITY FEATURES

FTC v. Countrywide Home Loans, Inc. Settlement Fund          Bank of the West          90-78/1211          Check No.
c/o Gilardi & Co. LLC                                                                                       1307376
P.O. Box 719088
San Diego, CA 92171-9088

COPY

1709368

PAY     ***********Fourteen Dollars and 50/100***********

TO THE                                          Date: July 21, 2011          Pay Amount: $14.50
ORDER OF

                                                CLAIM #: FTCCHL-2042507-4

SHARAI BALFORD
21501 BUTTERCREST ST
SOUTHFIELD, MI   48075-3986                     VOID AFTER September 19, 2011

                                                Dennis A. Gilardi

9

⑈0001307376⑈ ⑆121100782⑆ 0145288⑈44⑈



1 WILLARD K. TOM
General Counsel
2
LUCY E. MORRIS
3 HEATHER ALLEN
LYNETTE HOTCHKISS
4 lmorris@ftc.gov; hallen@ftc.gov;
lhotchkiss@ftc.gov
5 Federal Trade Commission
600 Pennsylvania Avenue, N.W.
6 Washington, D.C. 20580
Tel: (202) 326-3224
7 Fax: (202) 326-3768
8 JOHN D. JACOBS (Local Counsel)
jjacobs@ftc.gov
9 California Bar No. 134154
Federal Trade Commission
10 10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024
11 Tel: (310) 824-4343
Fax: (310) 824-4380
12
13 Attorneys for the Plaintiff
Federal Trade Commission
14
15             UNITED STATES DISTRICT COURT
16             CENTRAL DISTRICT OF CALIFORNIA
17
18
19 FEDERAL TRADE COMMISSION,        )
                                    )   CV10 4193
20       Plaintiff,                 )   Case No.
                                    )
21            v.                    )
                                    )   CONSENT JUDGMENT AND ORDER
22 COUNTRYWIDE HOME LOANS, INC.,    )
   a corporation, and              )
23                                  )
   BAC HOME LOANS SERVICING, LP,    )
24 a limited partnership,           )
                                    )
25       Defendants.                )
                                    )
26
27
28       IT IS HEREBY ORDERED, ADJUDGED and DECREED, pursuant to and in

accordance with the Stipulation for Entry of Consent Judgment and

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

FILED
LODGED
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2010 JUN -7 AM 10: 24
BY

FILED
CLERK U.S. DISTRICT COURT
JUN 15 2010
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1  Order entered into by and between plaintiff the Federal Trade

2  Commission ("FTC" or "Commission") and defendants Countrywide Home

3  Loans, Inc. and BAC Home Loans Servicing LP (plaintiff and

4  defendants are collectively referred to as "the parties"), as

5  follows:

6  <center>**Findings**</center>

7       1.    This Court has jurisdiction over Defendants and the

8  subject matter of this action.   Venue in the Central District of

9  California is proper.

10      2.    The Complaint states a claim upon which relief may be

11 granted against Defendants under Sections 5(a) and 13(b) of the FTC

12 Act, 15 U.S.C. §§ 45(a) and 53(b).

13      3.    The activities of Defendants are in or affecting commerce,

14 as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C.

15 § 44.

16      4.    Defendants have not admitted any of the allegations of

17 wrongdoing set forth in the Complaint, and entry of this Order is

18 not an admission of any such allegations of wrongdoing or violation

19 of law.   Nonetheless, Defendants stipulate and agree to entry of

20 this Order in order to settle and resolve these disputes.   The

21 Complaint does not allege any wrongdoing by Bank of America, N.A.

22      5.    Plaintiff and Defendants waive all rights to seek judicial

23 review or otherwise contest the validity of this Order, and

24 Defendants waive any right that may arise under the Equal Access to

25 Justice Act, 28 U.S.C. § 2412.

26      6.    Entry of this Order is in the public interest.

27      7.    The parties, by and through their counsel, have agreed

28 that entry of this Order resolves all matters in dispute between

<center>2</center>

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1  them arising from the facts and circumstances alleged in the

2  Complaint in this action, up to the date of entry of this Order.

### Definitions

4      For purposes of this Order, the following definitions shall

5  apply:

6      1.  "Affiliate" shall mean an organization that owns or

7  controls, is owned or controlled by, or is under common ownership or

8  control with, another organization;

9      2.  "BAC Home Loans Servicing" shall mean BAC Home Loans

10  Servicing, LP, formerly doing business as Countrywide Home Loans

11  Servicing, LP, and its successors and assigns, by whatever names

12  they might be known, but not including any Bank;

13      3.  "Bank" shall mean a bank that is exempt from the FTC's

14  jurisdiction pursuant to Section 5(a)(2) of the FTC Act, 15 U.S.C.

15  § 45(a)(2), including Bank of America, N.A. "Bank" shall not

16  include any Person or entity controlled directly or indirectly by a

17  bank and that is not itself a bank, such as an operating subsidiary

18  or Affiliate of a bank that is not itself a bank;

19      4.  "Chapter 13 Bankruptcy" shall mean any bankruptcy case

20  filed under Chapter 13 of Title 11 of the United States Code, 11

21  U.S.C. §§ 1301-1330;

22      5.  "Clear and Prominent" or "Clearly and Prominently" shall

23  mean that information is displayed in a manner that is readily

24  noticeable, readable, and understandable;

25      6.  "Competent and Reliable Evidence" shall mean tests,

26  analyses, research, studies, or other evidence, including a data

27  integrity program that complies with Section XI of this Order, based

28  on the expertise of professionals in the relevant area, that has

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1  been conducted and evaluated in an objective manner by Persons

2  qualified to do so, using procedures generally accepted in the

3  profession to yield accurate and reliable results;

4      7.   "Countrywide Home Loans" shall mean Countrywide Home

5  Loans, Inc. and its successors and assigns, by whatever names they

6  might be known, but not including any Bank;

7      8.   "Default-Related Service" shall mean any service ordered

8  as a result of a consumer's payment default on a Loan, for the

9  purpose of protecting the note holder's interest in the property and

10  rights under the security instrument, for which the Loan account is

11  charged a Fee (e.g., services of a type currently or in the future

12  provided by BAC Field Services Corporation, Landsafe Default, Inc.,

13  and the trustee-services business of ReconTrust Company, N.A., such

14  as property inspections, property preservation, broker's price

15  opinions, title searches and reports, and foreclosure trustee

16  services);

17      9.   "Defendants" shall mean BAC Home Loans Servicing and

18  Countrywide Home Loans, individually, collectively, or in any

19  combination;

20      10.  "Escrow Deficiency" shall have the meaning set forth in 24

21  C.F.R. § 3500.17;

22      11.  "Escrow Shortage" shall have the meaning set forth in 24

23  C.F.R. § 3500.17;

24      12.  "FTC Act" shall mean the Federal Trade Commission Act, 15

25  U.S.C. §§ 41-58;

26      13.  "Fees" shall mean all fees and charges, including but not

27  limited to fees for late payments, property inspections, property

28  preservation, broker's price opinions, appraisals, legal services,

1 court costs, reinstatement, modification, and any other fees or

2 charges that a consumer is or was assessed by Defendants in

3 connection with the Servicing of any Loan;

4     14. "Loan" shall mean a residential mortgage loan, *i.e.*, a

5 loan secured by a lien on real property taken as security for the

6 repayment of the loan;

7     15. "Loan Instruments" shall mean the security instrument and

8 promissory note signed by the consumer to consummate his or her

9 Loan;

10     16. "Monthly Payment" shall mean a monthly or other periodic

11 payment a consumer must make under the Loan Instruments to repay the

12 Loan principal, pay interest on the principal, and, if necessary,

13 fund escrow accounts for insurance and/or real estate taxes;

14     17. "Person" shall mean any individual, group, unincorporated

15 association, limited or general partnership, corporation, trust, or

16 other business entity; and

17     18. "Servicing" shall mean receiving any payments from (or

18 for) a consumer pursuant to the terms of any Loan, including amounts

19 for escrow accounts, and applying the payments of principal and

20 interest and such other payments with respect to the amounts

21 received from (or for) the consumer as may be required pursuant to

22 the terms of the Loan. "Servicing" shall also include any related

23 Loan servicing activity such as the administration of Loan accounts,

24 sending periodic billing statements to a consumer, maintaining

25 records of the status of the consumer's Loan accounts, providing

26 information to and resolving disputes with the consumers regarding

27 Loan accounts, the collection of Loan payments, the foreclosure of

28 real property, the use of consumer reports and the furnishing of

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1 information to consumer reporting agencies, and the collection or

2 imposition of Fees in relation to any of the foregoing.

### INJUNCTIVE RELIEF

#### Prohibited Business Practices

#### I.

6     IT IS THEREFORE ORDERED that Defendants, their officers,

7 employees, agents, representatives, and all other Persons or

8 entities in active concert or participation with them who receive

9 actual notice of this Order by personal service or otherwise,

10 directly or through any corporation, subsidiary, division, or other

11 device, are hereby permanently restrained and enjoined, in

12 connection with the Servicing of any Loan in default or Chapter 13

13 Bankruptcy, from:

    A.   Misrepresenting, expressly or by implication, the status
of the Loan or amounts owed on the Loan, including but not
limited to the amount of any Monthly Payment, Fee claimed
or assessed, Escrow Shortage, or Escrow Deficiency;

    B.   Misrepresenting, expressly or by implication, that any
payment or Fee is allowed under the Loan Instruments or
permitted by law;

    C.   Misrepresenting, expressly or by implication, the amount,
nature, or terms of any Fee or other condition or
requirement of any Loan; and

    D.   Making any representation, expressly or by implication,
about the status of the Loan, amounts owed on the Loan
(including but not limited to the amount of any Monthly
Payment, Fee claimed or assessed, Escrow Shortage, or
Escrow Deficiency), the date that any payment or Fee is

1   due, or any other information regarding the terms or

2   conditions of a Loan, unless, at the time of making such

3   representation, such Persons possess and rely on Competent

4   and Reliable Evidence that substantiates that the

5   representation is true.

6                                    II.

7       IT IS FURTHER ORDERED that Defendants, their officers,

8   employees, agents, representatives, and all other Persons or

9   entities in active concert or participation with them who receive

10  actual notice of this Order by personal service or otherwise,

11  directly or through any corporation, subsidiary, division, or other

12  device, are hereby permanently restrained and enjoined, in

13  connection with the Servicing of any Loan, from assessing and/or

14  collecting any Fee for a service unless it is for services actually

15  rendered and is (a) authorized and Clearly and Prominently disclosed

16  by the Loan Instruments, and not prohibited by law; (b) expressly

17  permitted by law and not prohibited by the Loan Instruments; or

18  (c) a reasonable Fee for a specific service requested by a consumer

19  that is assessed and/or collected only after Clear and Prominent

20  disclosure of the Fee is provided to the consumer and explicit

21  consent is obtained from the consumer to pay the Fee in exchange for

22  the service, and such Fee is not otherwise prohibited by law or the

23  Loan Instruments.

24                                   III.

25      IT IS FURTHER ORDERED that Defendants, their officers,

26  employees, agents, representatives, and all other Persons or

27  entities in active concert or participation with them who receive

28  actual notice of this Order by personal service or otherwise,

7

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1  directly or through any corporation, subsidiary, division, or other

2  device, are hereby permanently restrained and enjoined, in

3  connection with the Servicing of any Loan, from assessing and/or

4  collecting any Fee for a Default-Related Service unless it is a

5  reasonable Fee charged by a third-party service provider, including

6  an Affiliate of Defendants, for a Default-Related Service that is

7  actually performed.

**IV.**

9  IT IS FURTHER ORDERED that Defendants, their officers,

10  employees, agents, representatives, and all other Persons or

11  entities in active concert or participation with them who receive

12  actual notice of this Order by personal service or otherwise,

13  directly or through any corporation, subsidiary, division, or other

14  device, are hereby permanently restrained and enjoined, in

15  connection with the Servicing of any Loan, from assessing and/or

16  collecting any Fee for a Default-Related Service performed by an

17  Affiliate of any Defendant, unless the Fee complies with Sections II

18  and III of this Order and the amount of the Fee does not exceed the

19  lesser of (1) any Fee limitation or allowable amount for the service

20  under applicable state law, (2) any published, pre-established Fee

21  limitation or allowable amount for the service under the guidelines

22  for the applicable government-sponsored enterprise investing in the

23  Loan or the government agency insuring the Loan (for all other

24  Loans, Federal National Mortgage Association ("Fannie Mae")

25  guidelines shall apply), and (3) the market rate for the service.

26  To determine the market rate, Defendants shall obtain annual market

27  reviews of their Affiliates' pricing for Default-Related Services;

28  such market reviews shall be performed by a qualified, objective,

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1 independent third-party professional, using procedures and standards

2 generally accepted in the industry to yield accurate and reliable

3 results.

4                                    **V.**

5      IT IS FURTHER ORDERED that, within one-hundred fifty (150) days

6 from the date of entry of this Order, Defendants, their officers,

7 employees, agents, representatives, and all other Persons or

8 entities in active concert or participation with them who receive

9 actual notice of this Order by personal service or otherwise,

10 directly or through any corporation, subsidiary, division, or other

11 device, are hereby permanently restrained and enjoined, in

12 connection with the Servicing of any Loan, from failing to disclose

13 Clearly and Prominently the following information:

14      A.    At Loan origination or upon acquiring the Servicing rights

15            to the consumer's Loan, Defendants shall disclose any use

16            of Affiliates for Default-Related Services and if Fees are

17            assessed for those services;

18      B.    If the consumer's Loan goes into default and prior to

19            assessing any Fees for Default-Related Services,

20            Defendants' notice of default shall disclose (1) any use

21            of Affiliates for Default-Related Services; (2) if Fees

22            are assessed for those services; and (3) a link to a

23            schedule of Fees for those services ("Fee Schedule") on

24            Defendants' website(s).  This Fee Schedule shall include a

25            description of the Fees that may be charged, the amount

26            or, where applicable, the range of each Fee, and, if the

27            Fee will or may be paid to an Affiliate, a disclosure of

28

9

1          that fact and the names of the affiliated service

2          providers; and

3     C.    The Fee Schedule shall be posted and available on the

4          Defendants' website(s) and a copy of the Fee Schedule

5          shall be mailed or delivered to the consumer upon request,

6          at no cost to the consumer.

7                    **VI.**

8     IT IS FURTHER ORDERED that, for eight (8) years after the date

9 of entry of this Order, Defendants, their officers, employees,

10 agents, representatives, and all other Persons or entities in active

11 concert or participation with them who receive actual notice of this

12 Order by personal service or otherwise, directly or through any

13 corporation, subsidiary, division, or other device, are hereby

14 permanently restrained and enjoined, in connection with the

15 Servicing of any Loan, from (1) initiating a foreclosure action, or

16 assessing Fees in connection with an actual or threatened

17 foreclosure action, until the Defendants have reviewed Competent and

18 Reliable Evidence that substantiates that the consumer is in default

19 under the terms of the Loan Instruments; and (2) consummating a

20 foreclosure sale until Defendants have investigated any

21 non-frivolous disputes by the consumer and informed the consumer of

22 the results of the investigation.

23           **Bankruptcy Servicing Requirements**

24                 **VII.**

25     IT IS FURTHER ORDERED that, within thirty (30) days of the date

26 of entry of this Order, Defendants, their officers, employees,

27 agents, representatives, and all other Persons or entities in active

28 concert or participation with them who receive actual notice of this

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1 Order by personal service or otherwise, directly or through any
2 corporation, subsidiary, division, or other device, are hereby
3 permanently restrained and enjoined, in connection with the filing
4 of any proof of claim in a Chapter 13 Bankruptcy case for a Loan
5 serviced by any Defendant, from failing to file with the proof of
6 claim (1) a copy of the Loan Instruments or, if a Loan Instrument
7 has been lost or destroyed, a sworn statement of the circumstances
8 of the loss or destruction; and (2) a detailed itemization of all
9 amounts claimed.  **Provided, however,** that nothing in this Section
10 shall require Defendants to do anything prohibited by the United
11 States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure,
12 or any local rule or court order in a Chapter 13 Bankruptcy.

13                              **VIII.**

14      IT IS FURTHER ORDERED that, within two-hundred seventy (270)
15 days of the date of entry of this Order (or as otherwise agreed to
16 by Commission counsel), Defendants, their officers, employees,
17 agents, representatives, and all other Persons or entities in active
18 concert or participation with them who receive actual notice of this
19 Order by personal service or otherwise, directly or through any
20 corporation, subsidiary, division, or other device, are hereby
21 permanently restrained and enjoined, in connection with the
22 Servicing of any Loan for a consumer in Chapter 13 Bankruptcy, from
23 failing to provide the consumer and the Chapter 13 trustee with an
24 informational notice on a monthly basis, in writing and at no cost
25 to the consumer or the trustee, that contains the following
26 information in a Clear and Prominent manner:

27      A.   the unpaid principal balance;

28      B.   the post-petition Monthly Payment amount;

11

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1    C.   if there are changes in the post-petition Monthly Payment

2          amount, the reason for and amount of the change;

3    D.   a complete itemization of each and every Fee assessed

4          *during the prior month, including the amount of each Fee,*

5          *a description of each Fee, and the date that each Fee was*

6          *assessed;*

7    E.   a complete itemization of all payments received during the

8          prior month, a total of any amounts held in suspense or

9          otherwise not applied to the Loan account, and an

10        itemization and description of any Fee amounts that remain

11        outstanding on the Loan account; and

12    F.   *the toll-free telephone number and address for the*

13          *consumer and the trustee to use to contact the Defendants*

14          *with Loan account questions.*

15  **Provided, however,** that nothing in this Section shall require

16  Defendants to do anything prohibited by the United States Bankruptcy

17  Code, the Federal Rules of Bankruptcy Procedure, or any local rule

18  or court order in a Chapter 13 Bankruptcy.

19                 **IX.**

20    IT IS FURTHER ORDERED that Defendants, their officers,

21  employees, agents, representatives, and all other Persons or

22  entities in active concert or participation with them who receive

23  actual notice of this Order by personal service or otherwise,

24  directly or through any corporation, subsidiary, division, or other

25  device, are hereby permanently restrained and enjoined, in

26  connection with the Servicing of any Loan for a consumer in Chapter

27  13 Bankruptcy, from failing to provide the consumer and the Chapter

28  13 trustee with *an informational notice on an annual basis,* in

<div align="center">12</div>

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1  writing and at no cost to the consumer or the trustee, that

2  discloses, Clearly and Prominently, the amount and nature of any

3  accrued Escrow Shortage and/or Escrow Deficiency.  Such notice shall

4  be in a form consistent with the requirements of 24 C.F.R. § 3500.17

5  and may be provided along with the monthly informational notice

6  required under Section VIII of this Order.  **Provided, however,** that

7  nothing in this Section shall require Defendants to do anything

8  prohibited by the United States Bankruptcy Code, the Federal Rules

9  of Bankruptcy Procedure, or any local rule or court order in a

10 Chapter 13 Bankruptcy.

11                                 X.

12      IT IS FURTHER ORDERED that Defendants, their officers,

13 employees, agents, representatives, and all other Persons or

14 entities in active concert or participation with them who receive

15 actual notice of this Order by personal service or otherwise,

16 directly or through any corporation, subsidiary, division, or other

17 device, are hereby permanently restrained and enjoined, in

18 connection with the Servicing of any Loan that incurred any Fee,

19 Escrow Shortage, and/or Escrow Deficiency during a Chapter 13

20 Bankruptcy, from collecting any such Fee, Escrow Shortage, and/or

21 Escrow Deficiency after Defendants obtain relief from the bankruptcy

22 stay or, if relief from stay is not sought or granted, after the

23 debtor is discharged or the bankruptcy case is dismissed, unless

24 Defendants (1) obtained specific court approval for the charges

25 during the Chapter 13 Bankruptcy case, or (2) provided to the

26 consumer the notices required under Sections VIII and IX of this

27 Order.

28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

## Data Integrity Requirements

### XI.

1  IT IS FURTHER ORDERED that Defendants, in connection with the
2  Servicing of any Loan in Chapter 13 Bankruptcy, shall, no later than
3  ninety (90) days after the date of entry of this Order, establish
4  and implement, and thereafter maintain, a comprehensive data
5  integrity program that is reasonably designed to ensure the accuracy
6  and completeness of data and other information regarding such Loans
7  prior to and while Servicing them ("data integrity program"). Such
8  data integrity program, the content and implementation of which must
9  be fully documented in writing, shall be appropriate to the nature,
10  size, complexity, and scope of Defendants' activities, and shall
11  include:

A.    the designation of an employee or employees to be
      accountable for the data integrity program;

B.    the regular testing or monitoring of the effectiveness of
      the data integrity program; and

C.    the evaluation and adjustment of the data integrity
      program in light of the results of the testing and
      monitoring required by Subsection B, any material changes
      to Defendants' operations or business arrangements, or any
      other circumstances that Defendants know or have reason to
      know may have a material impact on the effectiveness of
      the data integrity program.

### XII.

IT IS FURTHER ORDERED that Defendants obtain an assessment and
report (an "Assessment") from a qualified, objective, independent
third-party professional, using procedures and standards generally

14

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1 accepted in the profession, within two hundred seventy (270) days

2 after the date of entry of the Order, and biennially thereafter for

3 eight (8) years after entry of the Order, that:

4     A.   sets forth the specific data integrity program that

5           Defendants have implemented and maintained during the

6           reporting period;

7     B.   explains how such data integrity program is appropriate to

8           Defendants' size and complexity, and the nature and scope

9           of Defendants' activities; and

10     C.   explains how the data integrity program meets or exceeds

11           the protections required by Section XI of this Order.

12 Defendants shall provide a copy of the first Assessment to the

13 Commission within ten (10) days after the Assessment is delivered to

14 Defendants.  Defendants shall provide a copy of all: plans, reports,

15 studies, reviews, audits, audit trails, policies, training

16 materials, and assessments, whether prepared by or on behalf of

17 Defendants, relied upon to prepare such Assessment, to the

18 Commission within thirty (30) days of request.  All subsequent

19 biennial Assessments shall be retained by Defendants and a copy

20 provided to the Commission within thirty (30) days of request.

21                        **Monetary Relief**

22                            **XIII.**

23 IT IS FURTHER ORDERED that:

24     A.   Defendants, without admitting any violation of law, shall

25           pay the amount of one hundred eight million dollars

26           ($108,000,000.00) to remedy the violations of law alleged

27           by the FTC.  On or before five (5) business days after the

28           date of entry of this Order, Defendants shall wire

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1    transfer the sum of one hundred eight million dollars

2    ($108,000,000.00) to the Commission or such agent as the

3    Commission may direct, pursuant to instructions provided

4    by the Commission.  All funds paid pursuant to this Order

5    shall be deposited into a fund administered by the

6    Commission or its agent to be used for equitable relief

7    for consumers whose Loans were serviced by Defendants

8    prior to their acquisition by Bank of America, including

9    but not limited to consumer redress and any attendant

10    expenses for the administration of the redress program.

11    In the event that direct redress to consumers is wholly or

12    partially impracticable or funds remain after redress is

13    completed, the Commission may apply any remaining funds

14    for such other equitable relief (including consumer

15    information remedies) as it determines to be reasonably

16    related to the Defendants' practices alleged in the

17    Complaint.  Any funds not used for such equitable relief

18    shall be deposited as equitable disgorgement into the

19    United States Treasury.  Defendants shall have no right to

20    challenge the FTC's choice of remedies under this Section.

21  B.    In the event that Defendants default on any obligation to

22    make any payment set forth in this Order, which default

23    continues for ten (10) days beyond the due date of the

24    payment, the entire unpaid amount together with interest,

25    computed pursuant to 28 U.S.C. § 1961(a) from the date of

26    default to the date of payment, shall immediately become

27    due and payable.  Notwithstanding any other provision of

28    this Order, Defendants agree that if they fail to meet any

16

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1   payment obligations set forth in this Order, Defendants

2   shall pay the costs and attorneys' fees incurred by the

3   Commission or its agents in any attempts to collect

4   amounts due pursuant to this Order.

5   C.   Defendants relinquish all dominion, control, and title to

6   the funds paid to the fullest extent permitted by law.

7   Defendants shall make no claim to or demand for return of

8   the funds, directly or indirectly, through counsel or

9   otherwise.

10   D.   Defendants agree that the facts as alleged in the

11   Complaint filed in this action shall be taken as true

12   without further proof in any bankruptcy case of either of

13   the Defendants or subsequent civil litigation pursued by

14   the Commission to enforce its rights to any payment or

15   money judgment pursuant to this Order.  For the purpose of

16   any subsequent proceeding to enforce payments required by

17   this Section of this Order, including any action filed in

18   a bankruptcy case of either of the Defendants, the

19   Defendants waive any right to contest the allegations in

20   the Commission's Complaint.

21                          **Data**

22                          **XIV.**

23   IT IS FURTHER ORDERED that, subject to the FTC's certification

24   of compliance with the Right to Financial Privacy Act, to facilitate

25   redress under Section XIII above, the Defendants shall provide the

26   Commission and/or its designated agent, within thirty (30) calendar

27   days after receiving a written request by the Commission or its

28   designated agent, with all information reasonably required to

17

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1  administer redress.  Defendants shall provide a complete

2  electronically stored data set in a compatible format (as reasonably

3  determined by the FTC and/or its agent).

4  **Compliance Monitoring**

5  **XV.**

6  IT IS FURTHER ORDERED that, for the purpose of monitoring and

7  investigating compliance with any provision of this Order,

8  A.  Within thirty (30) days of receipt of written notice from

9  a representative of the Commission, Defendants each shall

10  submit additional written reports, which are true and

11  accurate and sworn to under penalty of perjury; produce

12  documents for inspection and copying; appear for

13  deposition; and provide entry during normal business hours

14  to any business location in each Defendant's possession or

15  direct or indirect control to inspect the business

16  operation;

17  B.  In addition, the Commission is authorized to use all other

18  lawful means, including but not limited to:

19  1.  obtaining discovery from any Person, without further

20  leave of court, using the procedures prescribed by

21  Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69; and

22  2.  having its representatives pose as consumers and

23  suppliers to Defendants, their employees, or any

24  other entity managed or controlled in whole or in

25  part by any Defendant, without the necessity of

26  identification or prior notice;

27  C.  Defendants each shall permit representatives of the

28  Commission to interview any employer, consultant,

18

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1    independent contractor, representative, agent, or employee

2    who has agreed to such an interview, relating in any way

3    to any conduct subject to this Order. The Person

4    interviewed may have counsel present.

5    ***Provided however***, that nothing in this Order shall limit the

6 Commission's lawful use of compulsory process, pursuant to Sections

7 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any

8 documentary material, tangible things, testimony, or information

9 relevant to unfair or deceptive acts or practices in or affecting

10 commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

**Compliance Reporting**

**XVI.**

13   IT IS FURTHER ORDERED that, in order that compliance with the

14 provisions of this Order may be monitored:

15   A.   For a period of five (5) years from the date of entry of

16        this Order, Defendants shall notify the Commission of any

17        changes in structure of any Defendant or any business

18        entity that any Defendant directly or indirectly controls,

19        or has an ownership interest in, that may affect

20        compliance obligations arising under this Order, including

21        but not limited to: incorporation or other organization; a

22        dissolution, assignment, sale, merger, or other action;

23        the creation or dissolution of a subsidiary, parent, or

24        Affiliate that engages in any acts or practices subject to

25        this Order, or a change in the business name or address,

26        at least thirty (30) days prior to such change, *provided*

27        that, with respect to any such change in the business

28        entity about which a Defendant learns less than thirty

19

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1    (30) days prior to the date such action is to take place,

2    such Defendant shall notify the Commission as soon as

3    practicable after obtaining such knowledge.

4  B.  One hundred eighty (180) days after the date of entry of

5    this Order and annually thereafter for a period of three

6    (3) years, Defendants each shall provide a written report

7    to the FTC, which is true and accurate and sworn to under

8    penalty of perjury, setting forth in detail the manner and

9    form in which they have complied and are complying with

10    this Order.  This report shall include, but not be limited

11    to:

12    1.    A copy of each acknowledgment of receipt of this

13        Order, obtained pursuant to the Section titled

14        "Distribution of Order;"

15    2.    Any changes required to be reported under Subsection

16        A of this Section.

17  C.  Each Defendant shall notify the Commission of the filing

18    of a bankruptcy petition by such Defendant within fifteen

19    (15) days of filing.

20  D.  For the purposes of this Order, Defendants shall, unless

21    otherwise directed by the Commission's authorized

22    representatives, send by overnight courier all reports and

23    notifications required by this Order to the Commission, to

24    the following address:

25            Associate Director for Enforcement
            Bureau of Consumer Protection
26            Federal Trade Commission
            600 Pennsylvania Avenue, N.W.
27            Washington, D.C. 20580
            RE: FTC v. Countrywide Home Loans, Inc., et al.
28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1    *Provided* that, in lieu of overnight courier, Defendants

2    may send such reports or notifications by first-class

3    mail, but only if Defendants contemporaneously send an

4    electronic version of such report or notification to the

5    Commission at: DEBrief@ftc.gov.

6  E.   For purposes of the compliance reporting and monitoring

7       *required by this Order*, the Commission is authorized to

8       communicate directly with each Defendant.

9                         **Recordkeeping**

10                            **XVII.**

11    IT IS FURTHER ORDERED that, for a period of eight (8) years

12 from the date of entry of this Order, Defendants are hereby

13 restrained and enjoined, in connection with the Servicing of any

14 Loan, from failing to create and retain, for a period of three (3)

15 years after the date of preparation of the record, the following

16 records:

17  A.   Accounting records that reflect the cost of Loans acquired

18       and/or sold; revenues generated from Servicing Fees and/or

19       Fees paid by and/or imposed on consumers; and the

20       disbursement of such revenues;

21  B.   Personnel records accurately reflecting: the name,

22       address, and telephone number of each *Person* employed in

23       any capacity by such business, including as an independent

24       contractor; that *Person's* job title or position; the date

25       upon which the *Person* commenced work; and the date and

26       reason for the *Person's* termination, if applicable;

27

28

                              21

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

C.    Consumer files containing the names, addresses, phone numbers, dollar amounts paid, and description of Fees or other charges imposed;

D.    Written complaints or disputes and Qualified Written Requests, as defined in 12 U.S.C. § 2605(e)(1)(B), from consumers (whether received directly, indirectly or through any third party) and responses to those complaints, disputes, or requests;

E.    Copies of all training materials and policy manuals; and

F.    All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

**Distribution of Order**

**XVIII.**

IT IS FURTHER ORDERED that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of the Order as directed below:

A.    Each Defendant shall deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the subject matter of this Order; and (3) any business entity resulting from any change in structure set forth in Subsection A of the Section titled "Compliance Reporting." For current

22

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1    personnel, delivery should be within thirty (30) days of

2    service of this Order upon such Defendant.  For new

3    personnel, delivery shall occur prior to them assuming

4    their responsibilities.  For any business entity resulting

5    from any change in structure set forth in Subsection A of

6    the Section titled "Compliance Reporting," delivery shall

7    be at least ten (10) days prior to the change in

8    structure.

9    B.    Defendants must secure a signed and dated statement

10         acknowledging receipt of the Order, within thirty (30)

11         days of delivery, from all Persons receiving a copy of the

12         Order pursuant to this Section.

13                    **Acknowledgment of Receipt of Order**

14                                  **XIX.**

15       IT IS FURTHER ORDERED that each Defendant, within five (5)

16   business days of receipt of this Order as entered by the Court, must

17   submit to the Commission a truthful sworn statement acknowledging

18   receipt of this Order.

19                       **Retention of Jurisdiction**

20                                  **XX.**

21       IT IS FURTHER ORDERED that this Court shall retain jurisdiction

22   of this matter for purposes of construction, modification, and

23   enforcement of this Order.

24

25   IT IS SO ORDERED.

26

27   DATED:   6/15/10

28                                        UNITED STATES DISTRICT JUDGE

                                                   23

1  APPROVED AS TO FORM AND CONTENT:

2

3

4                    FEDERAL TRADE COMMISSION

5

6  WILLARD K. TOM
   General Counsel

7

8       _Lucy E_____

9  LUCY E. MORRIS
   HEATHER ALLEN
10  LYNETTE HOTCHKISS
   lmorris@ftc.gov; hallen@ftc.gov; lhotchkiss@ftc.gov
11  Federal Trade Commission
   600 Pennsylvania Avenue
12  Washington, D.C.  20580
   Tel: (202) 326-3224
13  Fax: (202) 326-3768

14  John D. Jacobs (Local Counsel)
   jjacobs@ftc.gov
15  California Bar No. 134154
   Federal Trade Commission
16  10877 Wilshire Blvd., Ste. 700
   Los Angeles, CA 90024
17  Tel: (310) 824-4343
   Fax: (310) 824-4380

18

19  Attorneys for Plaintiff
   Federal Trade Commission

20

21  DATED:  June 7      , 2010

22

23

24

25

26

27

28

                           24

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

1

<u>DEFENDANTS</u>

2

3  FOR DEFENDANTS COUNTRYWIDE HOME LOANS, INC. AND BAC HOME LOANS
   SERVICING LP

4

5

6

Timothy S. Huval

7  Senior Vice President
   Home Loans Servicing Executive

8

9  DATED: May 3rd, 2010

10

11

12

JEFFREY SPIGEL, ESQ.

13 PETER TODARO, ESQ.
   BRANDT LEIBE, ESQ.

14 King & Spalding LLP
   1700 Pennsylvania Avenue, NW, Suite 200

15 Washington, DC 20006-4706
   Tel: (202) 626-2626

16 Fax: (202) 626-3737
   jspigel@kslaw.com

17

   Attorney for Defendants

18

19 DATED: MAY 14, 2010

20

21

22

23

24

25

26

27

28

25

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 10

21601 Buttercreek St Southfield, MI

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

10

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 11



SLS
Specialized Loan Servicing, LLC

8742 Lucent Blvd.
Suite 300
Highlands Ranch, CO 80129
1-800-315-4SLS (4757)

| Account Number | Statement Date |
| --- | --- |
| 1005503008 | 12/22/11 |

1st Mortgage
Property Address
21501 Buttercrest
Southfield MI 48075

* 0358249 000018854 09SLS2 0936841 P3 P7
SHARAI BALFORD
21501 BUTTERCREST ST
SOUTHFIELD MI 48075-3986

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

## WELCOME TO SPECIALIZED LOAN SERVICING, LLC

**Your Home Loan**
It is our pleasure to welcome you as a customer of Specialized Loan Servicing, LLC. Effective 12/16/2011 the servicing of your loan has been transferred from Bank Of America to us. Specialized Loan Servicing is pleased to be the new servicer of your Home loan. We also wish to assure you that the terms and conditions of this transfer will not affect any original loan documents other than the terms directly related to the servicing of your loan.

As your Home loan provider, Specialized Loan Servicing is committed to courteous and responsive service, accurate and timely handling of your payments, and simple, direct answers to your questions. For prompt response in all communications with us, please remember to reference your account number 1005503008.

**Payment Procedures**
Beginning 12/16/2011, all future payments should be mailed to Specialized Loan Servicing. Your previous servicer will not accept payments from you beginning on the date listed above. Attached is your first payment coupon. Beginning next month you will receive a monthly billing statement.

If your monthly payment includes additional funds for the payment of taxes and insurance, please refer to the General Tax and Insurance sections on page 2 of this statement.

## HOW TO CONTACT SLS

For up-to-the-minute information about your account, use our 24-hour automated information system. To ask about this statement or general up-to-the-minute account information, please call 1-800-315-4SLS (4757), Monday - Friday 6 a.m. - 6 p.m. MST. TDD: 1-800-268-9419, Monday - Friday 8:00 a.m. to 5:00 p.m. MST. Se Habla español - 1-800-315-4SLS (4757).

Or write to us at:

| | |
| --- | --- |
| General Customer Service Inquiries: | P.O. Box 636005
Littleton, CO 80163-6005 |
| Tax Department: | P.O. Box 961059
Ft. Worth, TX 76161-0059
Phone: 1-866-801-1373
Fax: 1-817-826-0460 |
| Insurance Department: | P.O. Box 620188
Doraville, GA 30362
Phone: 1-800-441-4145
Fax: 1-678-475-8763 |
| Payments: | Attn: Remittance Processing
P.O. Box 105219
Atlanta, GA 30348-5219 |
| Overnight Deliveries: | 8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129 |

Our Website - www.sls.net
How to reach your previous servicer:
Bank Of America
P.O. Box 5170
Simi Valley CA 93062
800-669-6607

(If not a toll free number, you may call collect.)

Detach and return with payment



SLS
Specialized Loan Servicing, LLC
P.O. Box 636005
Littleton, CO 80163-6005
1-800-315-4SLS (4757)

| Account Number |
| --- |
| 1005503008 |

1st Mortgage

A fee up to $25.00 will be charged for each returned payment except as otherwise limited by law.

**PAYMENT INSTRUCTIONS**

1. Please
   - Do not send cash
   - Do not staple your check to the payment coupon
   - Do not include correspondence.
2. Write your account number on your check or money order.
3. Write in any additional amounts you are including. (If the total is more than $5,000, please send certified check.)
4. Make your check payable to
   Specialized Loan Servicing
   Attn: Remittance Processing

| Payment Amount | $1638.24 |
| --- | --- |

The amount shown above is taken from preliminary data. Your current billing statement will be mailed within 7 business days. That statement will contain all of your payment information along with a return envelope for your payment. If you do not receive your statement, please call our customer care center at the number listed above.

Specialized Loan Servicing, LLC
PO Box 105219
Atlanta, GA 30348-5219

1005503008800000000000000000000001183A241

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

◆ 0358249 000038854 0952752 0916843

**SLS**
Specialized Loan Servicing, LLC

8742 Lucent Blvd.
Suite 300
Highlands Ranch, CO 80129
1-800-315-4SLS (4757)

| Account Number | Statement Date |
| --- | --- |
| 1005503008 | 12/22/11 |
| 1st Mortgage | |
| Property Address | |
| 21501 Buttercrest | |
| Southfield MI 48075 | |

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

Welcome to Specialized Loan Servicing LLC. It is our pleasure to welcome you as a customer. Your home loan servicing was recently transferred to us and this is your official notice of the transfer, as legally required. Your home loan was previously serviced by Bank Of America and you officially became a Specialized Loan Servicing LLC customer effective 12/16/2011. Going forward. Specialized Loan Servicing will handle the servicing of your home loan, which means collecting your monthly home loan payments and handling related issues. Please note the terms and conditions of your mortgage loan documents do not change in any way, other than terms directly related to the servicing of your home loan.

Except in limited circumstances, the law requires that your present servicer send you a notice at least 15 days prior to the effective servicing transfer date, which is also the date in which your first payment is due to Specialized Loan Servicing. Your present servicer may have provided this notice as part of your loan closing documents. If this is the case, please note that your first payment will be due to Specialized Loan Servicing. Specialized Loan Servicing must also send you this transfer notice no later than 15 days after the transfer date, which is why you are receiving this notice as part of your welcome package.

The date that Bank Of America will stop accepting payments from you is 12/16/2011. All payments due on or after 12/16/2011 should be sent to Specialized Loan Servicing. Your payment options are listed below.

**IF YOUR PROPERTY IS LOCATED IN THE STATE OF TEXAS:** Complaints regarding the servicing of your mortgage should be sent to the Department of Savings and Mortgage Lending. 2601 N. Lamar, Suite 201, Austin, Texas 78705. A toll-free consumer hotline is available at 1-877-276-5550.

Finally, we want to make you aware of certain rights you have under RESPA. A summary is provided at the bottom of this notice.

## ABOUT YOUR RIGHTS UNDER "RESPA"

You should be aware of your rights as a consumer with a home loan. These are explained in detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA)(12 U.S.C. 2605). Some of the highlights are as follows:

If during the first 60 days after your first payment is due to Specialized Loan Servicing. you mistakenly send your payment to Bank Of America, Specialized Loan Servicing  is not allowed to charge you a late fee, or to report you to the credit bureau during the 60 day period stated above.

If you send a "qualified written request" to Specialized Loan Servicing concerning the servicing of your loan, we must provide you with a written acknowledgement within 5 Business Days of the receipt of your request. A "qualified written request" is a written correspondence which includes your name and account number and your reasons for the request. Writing a note on your payment coupon or envelope is not considered a "qualified written request". Inquiries or information sent to us via our website is not considered a "qualified written request". Qualified written request must be sent to:

Attn: Customer Care Support
P.O. Box 636005
Littleton, CO 80163-6005

Specialized Loan Servicing has 30 Business Days after receiving your request to make any appropriate corrections to your account. We must provide you with a written clarification about any dispute about your account. During this 30 Business Day period, we may not provide information to a consumer reporting agency concerning any overdue payment related to your qualified written request. However, this does not prevent us from initiating foreclosure if proper grounds exist under your loan documents.

A Business Day is any day excluding legal public holiday (state or federal), Saturday or Sunday.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

©2004 Specialized Loan Servicing Trade/service marks are the property of Specialized Loan Servicing, LLC and/or its subsidiaries

X09480-00A

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 12

# TROTT & TROTT

### A PROFESSIONAL CORPORATION

**HEADQUARTERS:**
31440 Northwestern Hwy • Suite 200
Farmington Hills, MI 48334
248-642-2515 • Fax 248-642-3628

**GRAND RAPIDS:**
4024 Park East Ct. • Suite B
Grand Rapids, MI 49546
616-942-0893 • Fax 616-942-0921

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.

*sent via first class mail*

January 26, 2012

Derrick & Sharai Balford
21501 Buttercrest Street
Southfield, MI  48075

RE: Derrick & Sharai Balford
        21501 Buttercrest Street
        Southfield, MI  48075
        T&T #382801F01
        Loan #1005503008

Dear Mr. and Mrs. Balford:

I am writing to you in response to your request for a mediation meeting pursuant to MCL 600.3205. As I understand the facts, the request for a meeting was not timely. The request for a meeting was required to be received by our office by 10/11/11. On 10/13/11, our office received your correspondence requesting a meeting.

We then notified our client, Specialized, of your late request for a meeting. Our client has informed us that they will not schedule a mediation meeting pursuant to MCL 600.3205. They have, however, notified us that you can be reviewed outside of said statutory process by their loss mitigation department. You would need to call their loss mitigation department at 1-800-306-6059. If you are interested in that option, I would urge you to call as quickly as possible as the sale is scheduled for 3/27/12.

Very truly yours,
Trott & Trott, P.C.

*J Ch*

Timothy Chervenak

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

*12*

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 13



SLS
Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129-2386
1-800-315-4SLS (4757)

Pg 1 of 2

7106 7112 1690 1990 1281



7106711216901990128 1

+ 0377339 000000107 09SCN2 0068407
SHARAI BALFORD
21501 BUTTERCREST
SOUTHFIELD MI 48075-3986

May 8, 2012

Re: SLS Loan Number:   1005503008
Property Address:   21501 Buttercrest
Southfield, MI 48075

### Notice of Default and Notice of Intent to Foreclose

Dear Sharai Balford,

The Note on the above referenced loan is now in default as a result of your failure to pay the 09/01/09 payment and the payments due each month thereafter, as provided for in said Note. You are hereby notified that to cure such default you are required to pay to this office all past due payments plus late charges and any payments that may become due between the date of this notice and the date the default is cured. The amount required to cure the arrears as of 05/08/12 is $71,806.77. You have thirty-three (33) days from the date of this letter to cure the default. We urge you to immediately upon receipt of this letter contact our Customer Assistance Department at the number provided below to obtain the amount required to reinstate your loan.

Failure to pay the total amount due under the terms and conditions of your Deed of Trust/Mortgage by 06/10/12 may result in acceleration of the entire balance outstanding under the Note including, but not limited to, the principal, interest and all other outstanding charges and costs, and commencement of foreclosure of the Trust Deed/Mortgage which is security for your Note. Please be advised that any extension of time or forbearance in the exercising of any right or remedy as provided for in the Deed of Trust/Mortgage shall not constitute a waiver of or preclude the exercising of any right or remedy.

You have the right to reinstate the Note after acceleration as provided by law and you have the right to bring court action to assert the nonexistence of default or any other defense you have to acceleration and sale.

If your loan is not brought current, inspections of your property will be made and you will be assessed fees for that purpose as permitted under state law. Additionally, if your property is found to be vacant and unsecured, the mortgage holder will have it secured and will charge you for the cost of securing. You may also be liable for reasonable attorney fees and costs incurred in connection with any proceedings on the Note and Trust Deed and such other costs as may be allowed by law. In addition, you may be liable for any deficiency that may be established as a result of the foreclosure action unless precluded by a bankruptcy discharge.

*13*

05/08/12    1005503008    0377339 000000107 09SCN2 0068407    Pg 2 of 2

**In accordance with the Fair Debt Collection Practices Act, you are hereby given notice of the following:**

1. Although you are not required to pay the total debt (or balance) of the Account prior to its maturity or acceleration, federal law requires Specialized Loan Servicing to provide you with the amount of the debt. As of 05/08/12, the amount of the unpaid principal balance is $143,375.20.. This letter is in no way intended as a payoff statement and you must not rely upon this letter for purposes of paying off your mortgage.

2. Specialized Loan Servicing LLC is the current creditor to whom the debt is owed. If you request in writing within 30 days after you receive this notice, we will provide you with the name and address of the original creditor if different than the current creditor.

3. Unless within 30 days after you receive this notice you dispute the validity of the debt or a portion thereof, the debt will be assumed to be valid. If you notify us in writing within 30 days after you receive this notice that you dispute the debt or a portion thereof, we will obtain and mail to you verification of the debt.

4. Please be advised that we are attempting to collect a debt and any information obtained will be used for that purpose.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt, please be advised that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

If you believe that you are entitled to the benefits as outlined in the Servicemembers' Civil Relief Act, you should promptly provide us with evidence of your active duty status.

Specialized would like you to be aware that if you are unable to make payments or resume payments within a reasonable period of time due to a reduction in your income resulting from a loss or reduction in your employment, you may be eligible for Homeownership Counseling. Please contact the HUD toll free number (800-569-4287) to obtain a list of HUD approved nonprofit organizations serving your area.

If you have any questions, regarding this letter, please contact Specialized Loan Servicing, LLC at 800-306-6062 Monday through Friday, from 6:00 a.m. to 6:00 p.m. (MT). TDD number - 800-268-9419 Monday through Friday, from 8:00 a.m. to 5:00 p.m. (MT).

Specialized requests that all payments be made in certified funds, cashier's check or money order(s) payable to and mailed to Specialized Loan Servicing LLC, Attention: Customer Assistance Department to one of the below addresses (always include Loan Number with your payment):

| *VIA Regular Mail* | *VIA Over Night Address* | *VIA Western Union Quick Collect* |
|---|---|---|
| Specialized Loan Servicing, LLC | Specialized Loan Servicing, LLC | Code City: PAYSLS |
| PO Box 105219 | 8742 Lucent Blvd, Suite 300 | Code State: CO |
| Atlanta, GA 30348-5219 | Highlands Ranch, CO 80129 | Reference: Loan Number |

The matters discussed herein are of extreme importance. We trust you will give them appropriate attention. It is the practice and policy of SLS is to work with customers that have experienced a hardship. We have many alternative programs available to assist customers in avoiding a foreclosure action. Please visit our website address www.sls.net for options or feel free to contact our Customer Assistance area at 800-306-6062 where one of our experienced and skilled Agents may assist you. Do not delay. There is help available for most customers. We cannot assist you if you do not contact us. We are committed to providing you with professional and courteous service. We respect our customers, especially those that are having difficulties and will always strive to treat you with the dignity you deserve.

SPECIALIZED LOAN SERVICING, LLC
Customer Assistance Department

8742 Lucent Blvd   Suite 300, Highlands Ranch, Colorado  80129  PH (800) 306-6062

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 14

21501 Buttercrest Southfield, MI 48075

IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY AS TO THIS OBLIGATION. THIS COMMUNICATION IS INTENDED FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT IN VIOLATION OF THE AUTOMATIC STAY OR THE DISCHARGE INJUNCTION. IN SUCH CASE, PLEASE DISREGARD ANY PART OF THIS COMMUNICATION WHICH IS INCONSISTENT WITH THE FOREGOING. OTHERWISE FEDERAL LAW REQUIRES US TO ADVISE YOU THAT COMMUNICATION FROM OUR OFFICE COULD BE INTERPRETED AS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR NINE MONTHS, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO THE BENEFITS OF THE SERVICEMEMBERS CIVIL RELIEF ACT MORTGAGE SALE - Default has been made in the conditions of a mortgage made by Sharni Balford, a married woman and Derrick Balford, her husband to Mortgage Electronic Registration Systems, Inc., as nominee for lender and lender's successors and/or assigns, Mortgagee, dated November 25, 2005 and recorded January 13, 2006 in Liber 36865, Page 67 Oakland County Records, Michigan. Said mortgage is now held by The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc. ASSET-BACKED CERTIFICATES SERIES 2005-17 by assignment. There is claimed to be due at the date hereof the sum of One Hundred Sixty-Seven Thousand Seven Hundred Eighty-Four and 57/100 Dollars ($167,784.57), including interest at 0% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue at the Oak and Circuit Court, Room #/128h 1st Floor West Wing, 1200 N Telegraph Rd Pontiac, MI 48341 in Oakland County, Michigan at 10:00 a.m. on 09/21/2012 Said premises are located in the City of Southfield, Oakland County Michigan, and are described as: Property situated in the City of Southfield, Oakland County, State of Michigan: Lot 8th of Lorraine Subdivision, according to the plat thereof as recorded in Liber 103, Page s 37 and 38 of Plats, Oakland County Records. The redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCA x600.3241a, in which case the redemption period shall be 30 days from the date of such sale. TO ALL PURCHASERS: The foreclosing mortgagee can rescind the sale. In that event, your damages, if any, are limited solely to the return of the bid amount tendered at sale, plus interest. If the property is sold at foreclosure sale pursuant to MCL 600.3278, the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damage to the property during the redemption period. If you are a tenant in the property, please contact our office as you may have certain rights. Dated: July 18, 2012 Orlans Associates, P.C. Attorneys for Servicer P.O. Box 5041 Troy MI 48007-5041 File No. 347.0553 (07-18)(08-05)

14

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 15



**"IMPORTANT"**
You meet the criteria to apply for a new federal
government modification program. Qualifying
customers may reduce their monthly payment by
an average of 35%.*

Please complete, sign and return all the
enclosed documents by 09-07-2012 to
see if you qualify.

000409

August 8, 2012
SHARAI BALFORD
21501 BUTTERCREST ST
SOUTHFIELD, MI 48075-3986

Dear SHARAI BALFORD                                     Loan number: 1005503008

We are pleased to let you know that you meet the criteria required to apply for a new modification program recently announced as a result of the U.S. Department of Justice and State Attorneys General global settlement. We encourage you to apply since this modification program could provide qualified customers significant principal reduction and reduce monthly payments by an average of 35%.*

Additionally, if you qualify for this modification, any past due late fees will be waived, interest and advances that we paid on your behalf will be added to your principal balance, and your loan will be brought up to date.

**What you need to do**
- To help us determine your eligibility for this principal reduction modification program, please send us the requested financial information listed in the enclosed checklist by 09-07-2012. We have provided a pre-paid Federal Express label for your convenience. You may also submit the information via fax at 720-241-7526 or by email at CRDOCS@sls.net. Within 30 days of receiving all of your documents, we will send you an approval or decline letter explaining next steps.
- Please be sure to promptly respond to any requests you receive from us.
- Please read the enclosed Frequently Asked Questions that includes important information on taxes and foreclosure.

**We are here to help**
We want to help you avoid foreclosure and strongly encourage you to apply for this new program. Please note that if we do not receive your documents by 09-07-2012 we will continue normal activities for collecting past due loan payments.

If you have any questions, please call our Customer Resolution Department at 800-306-6059 Monday through Friday, 6:00 am to 7:00 pm MST.

Specialized Loan Servicing LLC

P.S. Qualifying customers may reduce their monthly payment by an average of 35%.* Please send us the requested information today.

*Enclosures: (1) Frequently Asked Questions (2) Checklist (3) IRS Form 4506-T (4) Profit and Loss Statement (5) Pre-paid Federal Express label*

*The estimate of the monthly payment reduction percentage was calculated using the average monthly payment before modification and the potential average monthly payment post modification for customers who are eligible for a modification under this settlement. Not all customers will be eligible for a principal reduction and/or payment reduction; however you must provide us with the documentation requested to see if you qualify.

8742 Lucent Blvd, Suite 300, Highlands Ranch, Colorado 80129
Phone 800-306-6059    Fax 720-241-7526

3 L T R                                SLS

15

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

**Frequently Asked Questions**

**Q. What is the government settlement about?**
The U.S. Department of Justice and certain State Attorneys General have announced terms of a settlement that addresses claims based on allegations about foreclosure, loan modification, and loss mitigation practices. As part of that settlement, Specialized Loan Servicing LLC is allowed to offer this new modification program that can result in substantial principal reduction savings to customers who qualify.

**Q. If I am approved for this modification, will I owe taxes on the amount forgiven?**
This varies based on your personal situation. Because we would be forgiving a portion of your loan, we are required under federal law to report this debt reduction to the Internal Revenue Service (IRS) as possible taxable income to you. Please consult your own tax advisor to determine whether you may be able to exclude the debt reduction from income. You can also find useful information at www.irs.gov (search: mortgage forgiveness)

**Q. What if I am in bankruptcy proceedings?**
If you are represented by an attorney, we must speak with your attorney or have your attorney's permission to speak with you about this program, so he or she must fax a letter to that effect (on the firm's letterhead) to us at 720-241-7526 before we discuss any details directly with you.

In addition, please consult with your attorney about how these programs could affect your mortgage and your bankruptcy case. Because you are in bankruptcy, any final modification of your mortgage may require bankruptcy court approval. If you are in Chapter 13 bankruptcy, you may also be required to amend your bankruptcy plan. Your bankruptcy attorney can assist you with that process.

**Q. Will a foreclosure occur if I participate in a modification program?**

**Important—Do not ignore any foreclosure notices.**

Our review of your loan for a modification and the process of foreclosure may proceed at the same time. While we will take steps to suspend a foreclosure sale if one is pending, you may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken in preparation for a foreclosure sale of your home. To protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process, contact us at 800-306-6059. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**Q. If I am in the deed in lieu process, may I still apply for a principal reduction modification?**
If you are currently in review for a deed in lieu program, you may apply for the principal reduction modification program. It is important to consider all of your options and determine which one is best for you, given your personal situation. Please call deed in lieu customer care at 800-306-6059 if you have questions regarding your deed in lieu in process.

**Q. If I am in the short sale process, may I still apply for a principal reduction modification?**
If you are currently in review for a short sale, you may apply for the principal reduction modification program. It is important to consider all of your options and determine which one is best for you, given your personal situation. If you choose to be considered for the modification program, you should reach out to trusted advisors such as your real estate agent or legal counsel to determine how to resolve any issues you may encounter regarding a short sale in process. Please call short sale customer care at 800-306-6059 if you have questions regarding your short sale in process.

**Q. Are there any special programs for military personnel?**
Specialized Loan Servicing LLC is dedicated to assisting our military customers with their home loan needs. Please contact us at 800-306-6059 if you are currently on active military duty or were released from active duty within the last nine months so that we can work with you to determine if this program is right for you.

BANKRUPTCY NOTICE- IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT OUR CUSTOMER CARE CENTER AT 800-306-6057.PLEASE READ THE ENCLOSED FREQUENTLY ASKED QUESTIONS FOR MORE INFORMATION.

Specialized Loan Servicing is required by law to inform you that this communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, the purpose of this communication is to let you know about your potential eligibility for a loan modification program that may help you bring or keep your loan current through affordable payments.

8742 Lucent Blvd, Suite 300, Highlands Ranch, Colorado 80129
Phone 800-306-6059   Fax 720-241-7626

**Document Checklist**

> **Each borrower on the loan must complete and return all of the applicable documents. Please send us copies of each document and keep the originals for your records. Updated or additional documents may be required.**

**For each borrower who receives a salary or hourly wages:**
- Copy of the most recent pay stub (or Leave and Earnings Statements for military borrowers)

**For each self-employed borrower:**
- Enclosed profit/loss statement – completed and signed

**For each borrower who receives income such as Social Security, disability or death benefits, pension, adoption assistance or public assistance:**
- Request for Transcript of Tax Return (IRS 4506-T) - completed and signed, and
- Copy of benefits statement or letter from the provider that states the amount, frequency and duration of the benefit, or
- Copy of the most recent bank statement (all pages) showing receipt of such payment

**For each borrower who chooses the option to have alimony, child support or separation maintenance considered as qualifying income:**
- Copy of divorce decree, separation agreement or other written agreement filed with the court, or equivalent document that states the amount and period of time over which the payment will be received (evidence that future payments will continue for 12 months). **and**
- Copy of the most recent bank statement (all pages), deposit slip, or cancelled check showing receipt of such payment

**For each borrower who receives rental/boarder income:**
- If the property is occupied by the borrower:
  - Copy of the most recent bank statement (all pages) or cancelled checks showing receipt of rental income payment, **and**
  - Signed letter from borrower detailing:
    - Properties that are tenant occupied
    - Amount of rent received
    - Monthly payments and name of lender for any mortgages
    - Monthly taxes and insurance (if not impounded)
    - Any homeowners association dues
- If the property is not occupied by the borrower:
  - Copy of the most recent bank statement (all pages) or cancelled checks showing receipt of rental income payment, **and**
  - Copy of the lease agreement

8742 Lucent Blvd. Suite 300, Highlands Ranch, Colorado 80129
Phone 800-306-6059   Fax 720-241-7526

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# Form 4506-T

**Request for Transcript of Tax Return**

(Rev. January 2008)

Department of the Treasury
Internal Revenue Service

OMB No. 1545-1872

► Do not sign this form unless all applicable lines have been completed.
Read the instructions on page 2.

► Request may be rejected if the form is incomplete, illegible, or any required line was blank at the time of signature.

Tip: Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first | **1b** First social security number on tax return or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return | **2b** Second social security number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code

**4** Previous address shown on the last return filed if different from line 3

**5** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

**Caution:** *DO NOT SIGN this form if a third party requires you to complete Form 4506-T, and lines 6 and 9 are blank.*

**6** Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ►

  **a** **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

  **b** **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days . . ☐

  **c** **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days . . . . . . . . . . . . . . . ☐

**7** **Verification of Nonfiling,** which is proof from the IRS that you did not file a return for the year. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**8** **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2006, filed in 2007, will not be available from the IRS until 2008. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days . . . . . . . ☐

**Caution:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

**9** Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

     / /      / /      / /      / /

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a
( )

**Sign Here**

► Signature (see instructions)      Date

     Title (if line 1a above is a corporation, partnership, estate, or trust)

► Spouse's signature      Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.      Cat. No. 37667N      Form **4506-T** (Rev. 1-2008)

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Form 4506-T (Rev. 1-2008)

Page **2**

## General Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the team based on the address of your most recent return.

**Note.** You can also call 1-800-829-1040 to request a transcript or get more information.

## Chart for individual transcripts (Form 1040 series and Form W-2)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team Stop 679 Andover, MA 05501<br><br>978-247-9255 |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362<br><br>770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301<br><br>512-460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888<br><br>559-456-5876 |
| Arkansas, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, West Virginia | RAIVS Team Stop 6705-B41 Kansas City, MO 64999<br><br>816-292-6102 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409<br><br>801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250<br><br>859-669-3592 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

*All others.* See Internal Revenue Code section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: Learning about the law or the form, 10 min.; Preparing the form, 12 min.; and Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see *Where to file* on this page.

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# PROFIT AND LOSS STATEMENT

Please complete a separate Profit and Loss Statement for each business owned by the borrower(s).

**Company Name:**

**Type of Business:**

**For the period:** _____ through _____
dd/mm/yyyy                     dd/mm/yyyy

**Name(s) of Borrower(s):**

| | | |
|---|---|---|
| **Income:** | Gross Sales and Receipts............................................. | |
| **Other Income:** | Other Income (Interest, fees earned, etc.)........................ | |
| | Total Income (Gross Sales + Other Income) | |
| **Business-Only Expenses:** | Salaries Paid to Owners (other than me/us)....... .......... | |
| | Salaries Paid to Employees (other than me/us)............... | |
| | Benefits to Owners/Employees (other than me/us)...... | |
| | Payroll Taxes........................................................ | |
| | Business Utilities............. .................................... | |
| | Business Rent and/or Mortgage Payments.................. | |
| | Insurance........................................................... | |
| | Advertising......................................................... | |
| | Telephone.......................................................... | |
| | Office Expenses.................................................. | |
| | Repairs and Maintenance...................................... | |
| | Business Travel, Meals and Entertainment.............. | |
| | Other Business Expenses. .................................... | |
| | Total Business Expenses | |
| **Net Income/Loss:** | (Total Income minus Total Expenses) | |

**Amount of Net Income That Borrower(s) Received**

This form accurately states my/our business expenses and self-employed income for the stated period.

_____          _____
Borrower Signature                                           Date

_____          _____
Co-Borrower Signature                                       Date

_____
Loan Number

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

# EXHIBIT 16

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

***SEC Info***   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Cwabs Inc · 424B5 · Cwabs Asset-Backed Certificates Trust 2005-17 · On 12/30/05

**Filed On 12/30/05 5:30pm ET · SEC Files 333-125164, -24 · Accession Number 950136-5-8409**

| Find | in this entire Filing. ▼ Show Docs searched ▼ and every "hit". ▼

Help... *Wildcards:* ? *(any letter),* ^ *(many). Logic:* for Docs: & (and). |(or); for Text: |(anywhere). "(&)" (near).

| As Of | Filer | Filing | For/On/As Docs:Size | Issuer |
|---|---|---|---|---|
| 12/30/05 | Cwabs Inc | 424B5 | 1:138 | Cwabs Asset-Backed Certi |

**Prospectus · Rule 424(b)(5)**
**Filing Table of Contents**

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: 424B5 | Prospectus | HTML | 1.45M |

## Document Table of Contents

| Page | (sequential) | | (alphabetic) | Top |
|---|---|---|---|---|

**Page** | **(sequential)** | | **(alphabetic)** | **Top**

1   1st Page  -  Filing Submission
4   Table of Contents
5   Summary
"   Sellers
"   Master Servicer
"   Trustee
"   POOLING AND SERVICING Agreement
"   Cut-off Date
6   Funding Period
7   Description of the Certificates
"   General
8   Record Date
"   Class 1-AF Certificates
"   CLASS AV Certificates
"   Senior Certificates
"   Subordinate Certificates
"   Fixed Rate Certificates
"   Adjustable Rate Certificates
"   Adjustable Rate Subordinate Certificates
"   Offered Certificates
"   Swap Certificates
10  Credit Enhancement
"   Subordination
11  The Corridor Contract
"   The Swap Contract
"   Class 1-Af Certificate Guaranty Insurance Policy
12  Advances

- Alternative Formats (Word, et al.)
- A-1
- Adjustable Rate Certificates
- Adjustable Rate Loan Group Excess Cashflow
- Adjustable Rate Subordinate Certificates
- Adjustment to Servicing Fee in Connection with Certain Prepaid Mortgage Loans
- Administrative Matters
- Advances
- Agreements, The
- Alternative Treatment of Termination-Related Payments
- Amendment
- Annex A
- Annex I
- Anti-Deficiency Legislation and Other Limitations On Lenders
- Applicability of Usury Laws
- Applied Realized Loss Amounts
- Assignment of the Mortgage Loans
- Assignment of the Trust Fund Assets
- Available Funds
- Available Information
- Backup Withholding
- Book-Entry Certificates
- Book-Entry Registration of Securities
- Calculation of One-Month LIBOR
- Carryover Reserve Fund

" Optional Termination
" Material Federal Income Tax Consequences
" ERISA Considerations
14 Risk Factors
27 The Mortgage Pool
29 Loan-to-Value Ratio
30 Stated Principal Balance
" The Statistical Calculation Pool
" Assignment of the Mortgage Loans
33 Pre-Funding
34 Loan Group 1
35 Loan Group 2
" Loan Group 3
" Loan Group 4
" Underwriting Standards
" Credit Blemished Mortgage Loans
37 Debt-To-Income Ratio
40 Servicing of the Mortgage Loans
" The Master Servicer
" Countrywide Home Loans
41 Collection Procedures
43 Adjustment to Servicing Fee in Connection with
Certain Prepaid Mortgage Loans
46 Book-Entry Certificates
52 Distributions
" Distributions of Interest
53 Distributions of Interest Funds for Loan Group 1
" Distributions of Interest Funds for Loan Group 2,
Loan Group 3 and Loan Group 4
54 Distributions of Funds from the Corridor Contract
57 Distributions of Principal Distribution Amount for
Loan Group 1
58 Distributions of Principal Distribution Amount for
Loan Group 2, Loan Group 3 and Loan Group 4
68 Class 1-AF Policy
" Residual Certificates
69 Overcollateralization Provisions
" Fixed Rate Loan Group Excess Cashflow
71 Adjustable Rate Loan Group Excess Cashflow
80 Calculation of One-Month LIBOR
" Carryover Reserve Fund
84 The Class 1-AF Insurer
86 Credit Comeback Excess Account
" Applied Realized Loss Amounts
89 Amendment
91 The Trustee
" Restrictions on Transfer of the Class A-R Certificates
92 Yield, Prepayment and Maturity Considerations
95 Last Scheduled Distribution Date
114 Use of Proceeds
116 Alternative Treatment of Termination-Related
Payments
118 Other Taxes
121 Method of Distribution
123 Legal Matters
" Experts

• Categories of Classes of Securities
• Certain Legal Aspects of the Loans
• Certain Matters Regarding the Master Servicer and
the Depositor
• Class 1-Af Certificate Guaranty Insurance Policy
• Class 1-AF Certificates
• Class 1-AF Insurer, The
• Class 1-AF Policy
• CLASS AV Certificates
• Collection Procedures
• Consumer Protection Laws
• Cooperative Loans
• Cooperatives
• Corridor Contract, The
• Countrywide Home Loans
• Credit Blemished Mortgage Loans
• Credit Comeback Excess Account
• Credit Enhancement
• Cross Support
• Cut-off Date
• Debt-To-Income Ratio
• Depositor, The
• Description of the Certificates
• Description of the Securities
• Discount or Premium on Pass-Through Securities
• Distributions
• Distributions of Funds from the Corridor Contract
• Distributions of Interest
• Distributions of Interest Funds for Loan Group 1
• Distributions of Interest Funds for Loan Group 2,
Loan Group 3 and Loan Group 4
• Distributions of Principal
• Distributions of Principal Distribution Amount for
Loan Group 1
• Distributions of Principal Distribution Amount for
Loan Group 2, Loan Group 3 and Loan Group 4
• Distributions on Securities
• Due-on-Sale Clauses
• Enforceability of Prepayment and Late Payment Fees
• Environmental Risks
• ERISA Considerations
• Events of Default; Rights Upon Event of Default
• Evidence as to Compliance
• Excess Inclusions
• Experts
• Financial Information
• Financial Instruments
• Fixed Rate Certificates
• Fixed Rate Loan Group Excess Cashflow
• Foreclosure
• Funding Period
• General
• Hazard Insurance
• Home Equity Loans
• Home Improvement Finance
• Important Notice About Information in This
Prospectus and Each Accompanying Prospectus
Supplement
• Incorporation of Certain Documents by Reference

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

124 Ratings
125 Index of Defined Terms
129 Annex A
"   A-1
175 Annex 1
182 Important Notice About Information in This
    Prospectus and Each Accompanying Prospectus
    Supplement
196 The Trust Fund
197 The Loans
200 Home Equity Loans
201 Substitution of Trust Fund Assets
"   Available Information
202 Incorporation of Certain Documents by Reference
"   Reports to Securityholders
203 The Depositor
"   Loan Program
204 Qualifications of Sellers
205 Representations by Sellers; Repurchases
206 Description of the Securities
208 Distributions on Securities
209 Available Funds
"   Distributions of Principal
212 Categories of Classes of Securities
215 Indices Applicable to Floating Rate and Inverse
    Floating Rate Classes
"   LIBO Method
218 Prime Rate
219 Book-Entry Registration of Securities
225 Letter of Credit
"   Insurance Policies, Surety Bonds and Guaranties
226 Over-Collateralization
"   Reserve Accounts
228 Pool Insurance Policies
229 Financial Instruments
"   Cross Support
230 Yield and Prepayment Considerations
232 The Agreements
"   Assignment of the Trust Fund Assets
234 Payments On Loans; Deposits to Security Account
236 Pre-Funding Account
237 Sub-Servicing by Sellers
238 Hazard Insurance
240 Realization Upon Defaulted Loans
241 Servicing and Other Compensation and Payment of
    Expenses
"   Evidence as to Compliance
242 Certain Matters Regarding the Master Servicer and
    the Depositor
243 Events of Default; Rights Upon Event of Default
244 Indenture
247 Termination; Optional Termination
248 Certain Legal Aspects of the Loans
"   Cooperatives
249 Foreclosure
250 Cooperative Loans

• Indenture
• Index of Defined Terms
• Index to Defined Terms
• Indices Applicable to Floating Rate and Inverse
  Floating Rate Classes
• Insurance Policies, Surety Bonds and Guaranties
• Interest Weighted Securities
• Junior Mortgages and Rights of Senior Mortgagees
• Last Scheduled Distribution Date
• Legal Investment
• Legal Matters
• Letter of Credit
• LIBO Method
• Loan Group 1
• Loan Group 2
• Loan Group 3
• Loan Group 4
• Loan Program
• Loans, The
• Loan-to-Value Ratio
• Market Discount
• Master Servicer
• Master Servicer, The
• Material Federal Income Tax Consequences
• Method of Distribution
• Miscellaneous Tax Aspects
• Mortgage Pool, The
• Offered Certificates
• Optional Termination
• Other Loan Provisions and Lender Requirements
• Other Tax Considerations
• Other Taxes
• Over-Collateralization
• Overcollateralization Provisions
• Payments On Loans; Deposits to Security Account
• POOLING AND SERVICING Agreement
• Pool Insurance Policies
• Pre-Funding
• Pre-Funding Account
• Premium
• Prime Rate
• Priority of Additional Advances
• Proposed Reporting Regulations
• Qualifications of Sellers
• Rating
• Ratings
• Realization Upon Defaulted Loans
• Record Date
• REMIC Expenses; Single Class REMICs
• Reports to Securityholders
• Representations by Sellers; Repurchases
• Reserve Accounts
• Residual Certificates
• Restrictions on Ownership and Transfer of Residual
  Interest Securities
• Restrictions on Transfer of the Class A-R Certificates
• Rights of Redemption
• Risk Factors
• Sale or Exchange

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

251 Environmental Risks
253 Rights of Redemption
    " Anti-Deficiency Legislation and Other Limitations
      On Lenders
254 Due-on-Sale Clauses
255 Enforceability of Prepayment and Late Payment Fees
    " Applicability of Usury Laws
    " Home Improvement Finance
257 Servicemembers Civil Relief Act
    " Junior Mortgages and Rights of Senior Mortgagees
    " Other Loan Provisions and Lender Requirements
258 Priority of Additional Advances
    " The Title 1 Program
262 Consumer Protection Laws
264 Taxation of Debt Securities
267 Interest Weighted Securities
    " Market Discount
268 Premium
269 Taxation of the REMIC and Its Holders
    " REMIC Expenses; Single Class REMICs
270 Taxation of the REMIC
271 Taxation of Holders of Residual Interest Securities
272 Sale or Exchange
    " Excess Inclusions
273 Restrictions on Ownership and Transfer of Residual
    Interest Securities
276 Administrative Matters
    " Tax Status as a Grantor Trust
    " Discount or Premium on Pass-Through Securities
277 Stripped Securities
279 Miscellaneous Tax Aspects
    " Backup Withholding
    " Proposed Reporting Regulations
280 Tax Treatment of Foreign Investors
    " Tax Characterization of the Trust Fund as a
      Partnership
281 Tax Consequences to Holders of the Notes
283 Tax Consequences to Holders of the Certificates
287 Other Tax Considerations
291 Legal Investment
293 Financial Information
294 Rating
295 Index to Defined Terms

• Sellers
• Senior Certificates
• Servicemembers Civil Relief Act
• Servicing and Other Compensation and Payment of
  Expenses
• Servicing of the Mortgage Loans
• Stated Principal Balance
• Statistical Calculation Pool, The
• Stripped Securities
• Subordinate Certificates
• Subordination
• Sub-Servicing by Sellers
• Substitution of Trust Fund Assets
• Summary
• Swap Certificates
• Swap Contract, The
• Table of Contents
• Taxation of Debt Securities
• Taxation of Holders of Residual Interest Securities
• Taxation of the REMIC
• Taxation of the REMIC and Its Holders
• Tax Characterization of the Trust Fund as a
  Partnership
• Tax Consequences to Holders of the Certificates
• Tax Consequences to Holders of the Notes
• Tax Status as a Grantor Trust
• Tax Treatment of Foreign Investors
• Termination; Optional Termination
• The Agreements
• The Class 1-AF Insurer
• The Corridor Contract
• The Depositor
• The Loans
• The Master Servicer
• The Mortgage Pool
• The Statistical Calculation Pool
• The Swap Contract
• The Title 1 Program
• The Trustee
• The Trust Fund
• Title 1 Program, The
• Trustee
• Trustee, The
• Trust Fund, The
• Underwriting Standards
• Use of Proceeds
• Yield and Prepayment Considerations
• Yield, Prepayment and Maturity Considerations

*This is an EDGAR HTML document rendered as filed. [ Alternative Formats ]*

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Case 4:12-cv-15183-MAG-LJM   ECF No. 1-2, PageID.116   Filed 11/26/12   Page 111 of 123

| 424B5 | 1st Page of 297 | TOC | Top | Previous | Next | Bottom | Just 1st |

Sponsored Ads...

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

http://www.secinfo.com/dsvrn.z86m.htm

8/18/2012

Case 4:12-cv-15183-MAG-LJM   ECF No. 1-2, PageID.117   Filed 11/26/12   Page 112 of 123
SEC Info - Cwabs Inc - 424B5 - Cwabs Asset-Backed Certificates Trust 2005-17 - On 12/. Page 7 of 470

PROSPECTUS SUPPLEMENT
(TO PROSPECTUS DATED NOVEMBER 16, 2005)

$2,520,700,100
(APPROXIMATE)

CWABS, INC.
DEPOSITOR

[GRAPHIC OMITTED]
COUNTRYWIDE(R)
--------------
HOME LOANS
SELLER

COUNTRYWIDE HOME LOANS SERVICING LP
MASTER SERVICER

CWABS ASSET-BACKED CERTIFICATES TRUST 2005-17
ISSUER
ASSET-BACKED CERTIFICATES, SERIES 2005-17

Distributions are payable on the 25th day of each month, beginning in January 2006

CONSIDER CAREFULLY THE RISK FACTORS BEGINNING ON PAGE S-10 IN THIS PROSPECTUS SUPPLEMENT AND ON PAGE 5 IN THE PROSPECTUS.

The certificates represent obligations of the trust and do not represent an interest in or obligation of CWABS, Inc., Countrywide Home Loans, Inc. or any of their affiliates.

This prospectus supplement may be used to offer and sell the offered certificates only if accompanied by the prospectus.

The following classes of certificates are being offered pursuant to this prospectus supplement and the accompanying prospectus:

| CLASS | ORIGINAL CERTIFICATE PRINCIPAL BALANCE(1) | PASS-THROUGH RATE | PRICE TO PUBLIC | UNDERWRITING DISCOUNT | PROCEEDS TO DEPOSITOR(2) |
|---|---|---|---|---|---|
| 1-AF-1 | $301,016,000 | (3) | 100.00000% | 0.05208% | 99.94792% |
| 1-AF-2 | $158,660,000 | 5.363%(4) | 99.99820% | 0.10417% | 99.89403% |
| 1-AF-3 | $206,419,000 | 5.711%(4) | 99.99913% | 0.15625% | 99.84289% |
| 1-AF-4 | $104,309,000 | 6.047%(4)(5) | 99.99457% | 0.25000% | 99.74457% |
| 1-AF-5 | $ 90,000,000 | 5.566%(4) | 99.99793% | 0.37500% | 99.62293% |
| BF | $ 12,150,000 | 6.200%(4) | 84.44982% | 2.28333% | 82.16649% |
| 2-AV | $311,720,000 | (6) | 100.00000% | 0.10417% | 99.89583% |
| 3-AV-1 | $407,938,000 | (6) | 100.00000% | 0.05217% | 99.94783% |
| 3-AV-2 | $ 45,326,000 | (6) | 100.00000% | 0.10417% | 99.89583% |
| 4-AV-1 | $338,226,000 | (6) | 100.00000% | 0.15625% | 99.84375% |
| 4-AV-2A | $312,223,000 | (6) | 100.00000% | 0.20833% | 99.79167% |
| 4-AV-2B | $ 34,692,000 | (6) | 100.00000% | 0.15625% | 99.84375% |
| 4-AV-3 | $106,475,000 | (6) | 100.00000% | 0.20833% | 99.79167% |
| MV-1 | $ 61,200,000 | (6) | 100.00000% | 0.41667% | 99.58333% |
| MV-2 | $ 54,400,000 | (6) | 100.00000% | 0.50000% | 99.50000% |
| MV-3 | $ 32,300,000 | (6) | 100.00000% | 0.83333% | 99.16667% |
| MV-4 | $ 28,900,000 | (6) | 100.00000% | 0.91667% | 99.08333% |
| MV-5 | $ 27,200,000 | (6) | 100.00000% | 1.04167% | 98.95833% |
| MV-6 | $ 25,500,000 | (6) | 100.00000% | 1.25000% | 98.75000% |
| MV-7 | $ 22,100,000 | (6) | 100.00000% | 1.58333% | 98.41667% |
| MV-8 | $ 20,400,000 | (6) | 98.15233% | 2.29667% | 95.85566% |
| BV | $ 19,550,000 | (6) | 94.00507% | 2.70833% | 91.29674% |
| A-R | $        100 | (7) | (8) | (8) | (8) |

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Case 4:12-cv-15183-MAG-LJM ECF No. 1-2, PageID 118 Filed 11/26/12 Page 113 of 123

(1) This amount is subject to a permitted variance in the aggregate of plus or minus 10%.

(2) Before deducting expenses payable by the Depositor estimated to be approximately $1,225,000.

(3) The pass-through rate for this class of offered certificates may adjust monthly, and will be subject to an interest rate cap, as described in this prospectus supplement under *"Description of the Certificates--Distributions--Distributions of Interest."*

(4) The pass-through rate for this class of offered certificates will be subject to an interest rate cap, as described in this prospectus supplement under *"Description of the Certificates--Distributions--Distributions of Interest."*

(5) The pass-through rate for this class of certificates will increase to 6.547% per annum after the optional termination date, subject to an interest rate cap, as described in this prospectus supplement under *"Description of the Certificates--Distributions--Distributions of Interest."*

(6) The pass-through rate for this class of offered certificates may adjust monthly, will be subject to increase after the optional termination date, and will be subject to an interest rate cap, as described in this prospectus supplement under *"Description of the Certificates--Distributions-- Distributions of Interest."*

(7) The Class A-R Certificates will not accrue any interest.

(8) The Class A-R Certificates will not be purchased by the underwriters and are being transferred to Countrywide Home Loans, Inc. as partial consideration for the sale of the mortgage loans. See *"Method of Distribution"* in this prospectus supplement.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS SUPPLEMENT OR THE PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

COUNTRYWIDE SECURITIES CORPORATION

BNP PARIBAS

RBS GREENWICH CAPITAL

December 23, 2005

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Case 4:12-cv-15183-MAG-LJM ECF No. 1-2 PageID.119 Filed 11/26/12 Page 114 of 123

## TABLE OF CONTENTS

PAGE
-----

**PROSPECTUS SUPPLEMENT**

Summary.................................................... S-1

Risk Factors............................................... S-10

The Mortgage Pool.......................................... S-23

Servicing of the Mortgage Loans............................ S-36

Description of the Certificates............................ S-41

Yield, Prepayment and Maturity Considerations.............. S-88

Use of Proceeds............................................ S-110

Material Federal Income Tax Consequences................... S-110

Other Taxes................................................ S-114

ERISA Considerations....................................... S-114

Method of Distribution..................................... S-117

Legal Matters.............................................. S-119

Experts.................................................... S-119

Ratings.................................................... S-120

Index of Defined Terms..................................... S-121

ANNEX A.................................................... A-1

ANNEX I.................................................... I-1

PAGE
----

**PROSPECTUS**

Important Notice About Information in This Prospectus and Each Accompanying
  Prospectus Supplement.................................... 4

Risk Factors............................................... 5

The Trust Fund............................................. 18

Use of Proceeds............................................ 24

The Depositor.............................................. 25

Loan Program............................................... 25

Description of the Securities.............................. 28

Credit Enhancement......................................... 46

Yield and Prepayment Considerations........................ 52

The Agreements............................................. 54

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Case 4:12-cv-15183-MAG-LJM   ECF No. 1-2, PageID.120   Filed 11/26/12   Page 115 of 123

Certain Legal Aspects of the Loans ........................................ 70

Material Federal Income Tax Consequences ............................... 85

Other Tax Considerations ................................................. 109

ERISA Considerations ..................................................... 109

Legal Investment ......................................................... 113

Method of Distribution ................................................... 114

Legal Matters ............................................................ 115

Financial Information .................................................... 115

Rating ................................................................... 116

Index to Defined Terms ................................................... 117

i

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

8/18/2012

Case 4:12-cv-15183-MAG-LJM ECF No. 1-2, PageID.121 Filed 11/26/12 Page 116 of 123
SEC Info - Cwabs Inc - 424B5 - Cwabs Asset-Backed Certificates Trust 2005-17 - On ... Page 11 of 470

--------------------------------------------------------------------

## SUMMARY

THIS SUMMARY HIGHLIGHTS SELECTED INFORMATION FROM THIS DOCUMENT AND DOES NOT CONTAIN ALL OF THE INFORMATION THAT YOU NEED TO CONSIDER WHEN MAKING YOUR INVESTMENT DECISION. TO UNDERSTAND ALL OF THE TERMS OF AN OFFERING OF THE CERTIFICATES, READ THIS ENTIRE DOCUMENT AND THE ACCOMPANYING PROSPECTUS CAREFULLY.

### THE CERTIFICATES

Asset-Backed Certificates, Series 2005-17, represent undivided beneficial ownership interests in a trust fund. The trust fund consists primarily of a pool of fixed and adjustable rate, credit blemished mortgage loans that are secured by first liens on one- to four-family residential properties and certain other property and assets described in this prospectus supplement. In addition, the Class AV and adjustable rate subordinate certificates represent undivided beneficial ownership interests in a trust referred to as the swap trust, the primary assets of which will be the swap trust's rights under the swap administration agreement referred to in this prospectus supplement.

See *"Description of the Certificates -- General"* in this prospectus supplement.

### DEPOSITOR

CWABS, Inc., a Delaware corporation and a limited purpose finance subsidiary of Countrywide Financial Corporation, a Delaware corporation.

See *"The Depositor"* in the prospectus.

### SELLERS

Countrywide Home Loans, Inc. and one or more special purpose entities established by Countrywide Financial Corporation or one of its subsidiaries. The one or more special purpose entities previously acquired the mortgage loans they are selling directly from Countrywide Home Loans, Inc.

See *"Servicing of the Mortgage Loans -- Countrywide Home Loans"* in this prospectus supplement.

### MASTER SERVICER

Countrywide Home Loans Servicing LP.

See *"Servicing of the Mortgage Loans -- The Master Servicer"* in this prospectus supplement.

### TRUSTEE

The Bank of New York, a New York banking corporation.

See *"Description of the Certificates -- The Trustee"* in this prospectus supplement.

### THE NIM INSURER

After the closing date, a separate trust or trusts may be established to issue net interest margin securities secured by all or a portion of the Class PF, Class PV, Class CF and Class CV Certificates. Those net interest margin securities may or may not have the benefit of one or more financial guaranty insurance policies that guaranty payments on those securities. The insurer or insurers that would issue any such financial guaranty insurance policy are referred to in this prospectus supplement as the *"NIM Insurer."* The references to the NIM Insurer in this prospectus supplement are applicable only if the net interest margin securities are so insured.

Any NIM Insurer will have a number of rights under the pooling and servicing agreement that will limit and otherwise affect the rights of the holders of the offered certificates. Any insurance policy issued by a NIM Insurer will not cover, and will not benefit in any manner whatsoever, the offered certificates.

See *Risk Factors--Rights of the NIM Insurer* in this prospectus supplement.

**POOLING AND SERVICING AGREEMENT**

The pooling and servicing agreement among the sellers, the master servicer, the depositor and the trustee, under which the trust fund will be formed.

**CUT-OFF DATE**

For any initial mortgage loan, the later of December 1, 2005 and the origination date of that mortgage loan, and for any subsequent mortgage loan, the later of the first day of the month of the related subsequent transfer date and the origination date of that subsequent mortgage loan.

-------------------------------------------------------------------------

S-1

Received for Filing Oakland County Clerk 2012 AUG 20 AM 09:28

Case 4:12-cv-15183-MAG-LJM ECF No. 1-2, PageID.123 Filed 11/26/12 Page 118 of 123

CLOSING DATE

On or about December 29, 2005.

FUNDING PERIOD

On the closing date, the depositor may elect to deposit an amount of up to 25% of the initial certificate principal balance of the certificates issued by the trust fund in a pre-funding account. The amount deposited will be allocated between the loan groups so that the amount allocated to any loan group will not exceed 25% of the aggregate certificate principal balance of the classes of certificates related to that loan group. If the depositor elects to make that deposit, the funding period will commence on the closing date and end on the earlier of (x) the date the amount in the pre-funding account is less than $175,000 and (y) February 13, 2006. During the funding period the amount deposited in the pre-funding account on the closing date is expected to be used to purchase subsequent mortgage loans.

See "The Mortgage Pool -- Pool Characteristics" in this prospectus supplement.

To the extent needed to make required interest payments on the certificates and to pay the Class 1-AF policy premium on or prior to the March 2006 distribution date, Countrywide Home Loans will make interest shortfall payments to the trust fund in order to offset shortfalls in interest collections attributable to the pre-funding mechanism or because newly originated loans do not have a payment due date in the due period related to that distribution date.

Any amounts in the pre-funding account not used during the funding period to purchase subsequent mortgage loans will be distributed to holders of the related senior certificates as a prepayment of principal on the distribution date immediately following the end of the funding period.

See "The Mortgage Pool -- Pre-Funding" in this prospectus supplement.

THE MORTGAGE LOANS

The mortgage pool will consist of fixed and adjustable rate mortgage loans that are secured by first liens on one- to four-family properties. The mortgage loans will be divided into four separate groups. Each such group of mortgage loans is referred to as a "loan group." Loan group 1 will consist of first lien conforming balance fixed rate mortgage loans. Loan group 2 will consist of first lien conforming balance fixed and adjustable rate mortgage loans. Loan group 3 will consist of first lien conforming balance fixed and adjustable rate mortgage loans and loan group 4 will consist of first lien fixed and adjustable rate mortgage loans.

See "The Mortgage Pool." in this prospectus supplement.

STATISTICAL CALCULATION INFORMATION

The statistical information presented in this prospectus supplement relates to a statistical calculation pool that does not reflect all of the mortgage loans that will be included in the trust fund. Additional mortgage loans will be included in the mortgage pool on the closing date and may be included during the funding period. In addition, certain mortgage loans in the statistical calculation pool may prepay in full or may be determined not to meet the eligibility requirements for the mortgage pool, and as a result may not be included in the mortgage pool.

The information presented in this prospectus supplement with respect to the statistical calculation pool is, unless otherwise specified, based on the scheduled principal balances as of December 1, 2005, which is the statistical calculation date. The aggregate stated principal balance of the statistical calculation pool as of the statistical calculation date is referred to as the statistical calculation date pool principal balance. As of the statistical

| PROOF OF SERVICE | SUMMONS AND COMPLAINT<br>Case No. 12-128839-CH |
|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☑ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required) |

☐ I served personally a copy of the summons and complaint,

☑ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with COMPLAINT AND JURY DEMAND WITH EXHIBITS

List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| Bank of New York Mellon Certificateholders CWABS, Inc., Asset Backed Certificate Series 2005-17 | Gerald L. Hassell, CEO<br>1 Wall Street, New York, NY 10286 | 10/28/2012 |
| Bank of America, NA | Brian Moynihan, CEO<br>100 N. Tryon St, Charlottte, NC 28255 | 10/28/2012 |
| Michigan Electronic Registration Systems, Inc. | Sharon Horstkamp, VP<br>1818 Library St., Suite 300, Reston, VA 20190 | 10/28/2012 |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

/s/Vanessa G. Fluker

| Service fee<br>$ | Miles traveled | Mileage fee<br>$ | Total fee<br>$ |
|---|---|---|---|

Signature

Vanessa G. Fluker
Name (type or print)
**Attorney for Plaintiff**
Title

Subscribed and sworn to before me on _____, _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                         Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

Received for Filing Oakland County Clerk 2012 NOV 07 PM 12:35

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Brian Moynihan,* CEO
BANK OF AMERICA, N.A.
100 N. TRYON ST.
CHARLOTTE, NC 28255

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _[signature]_  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
OCT 3 1 2012

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7011 2970 0001 8470 5660

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Sharon Horst-kamp,* V.P.
MICHIGAN ELECTRONIC
REGISTRATION SYSTEMS, INC.
1818 LIBRARY STREET, SUITE 300,
RESTON, VA 20190

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X    ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7011 2970 0001 8470 5646

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

Received for Filing Oakland County Clerk 2012 NOV 07 PM 12:35

English          Customer Service          USPS Mobile                                        Register / Sign in

 **USPS.COM**   Bank of New York Mellon                Search USPS.com or Track Packages
                    Mailing Confirmation

Quick Tools              Ship a Package        Send Mail        Manage Your Mail        Shop        Business Solutions

## Track & Confirm

GET EMAIL UPDATES      PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 70112870000184793853 | Priority Mail® | Arrival at Unit | November 06, 2012, 11:30 am | NEW YORK, NY 10007 | Expected Delivery By:<br>October 31, 2012<br>Certified Mail™<br>Return Receipt |
| | | Dispatched to Sort Facility | October 29, 2012, 5:58 pm | DETROIT, MI 48233 | |
| | | Acceptance | October 26, 2012, 4:00 pm | DETROIT, MI 48233 | |

### Check on Another Item

What's your label (or receipt) number?

Find

LEGAL                          ON USPS.COM                    ON ABOUT.USPS.COM              OTHER USPS SITES
Privacy Policy ›                Government Services ›          About USPS Home ›              Business Customer Gateway ›
Terms of Use ›                  Buy Stamps & Shop ›            Newsroom ›                     Postal Inspectors ›
FOIA ›                          Print a Label with Postage ›   Mail Service Updates ›         Inspector General ›
No FEAR Act EEO Data ›          Customer Service ›             Forms & Publications ›         Postal Explorer ›
                                Site Index ›                   Careers ›

Copyright© 2012 USPS. All Rights Reserved.

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No.  12-128839-CH |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☑ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required) |

☐ I served personally a copy of the summons and complaint,

☑ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with __COMPLAINT AND JURY DEMAND WITH EXHIBITS__

_____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| Specialized Loan Services, | Inc. c/o Capital Corporate Services, | Inc. |
| | 712 Abbott Rd. E. Lansing, MI 48823 | 10/28/2012 |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Mileage fee | Total fee |
|---|---|---|---|
| $ | | $ | $ |

/s/Vanessa G. Fluker
_____
Signature
Vanessa G. Fluker
Name (type or print)
Attorney for Plaintiff
_____
Title

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                                    Date

My commission expires: _____ Signature: _____
                                            Date                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                                    Attachments

_____ on _____
                                            Day, date, time

_____ on behalf of _____
Signature

Received for Filing Oakland County Clerk 2012 NOV 07 PM 12:35

Received for Filing Oakland County Clerk 2012 NOV 07 PM 12:35

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

SPECIALIZED LOAN SERVICES, LLC
C/O CAPITAL CORPORATE SERVICES, INC.
712 ABBOTT RD.
EAST LANSING, MI 48823

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Sarah McAlpine_      ☐ Agent
                        ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)               ☐ Yes

2. Article Number
(Transfer from service label)      7011 2970 0001 8470 5639

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540